ROGER A. LIBBY, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 21271

February 26, 1997                                934 P.2d 220

*Steven G. McGuire,* State Public Defender, *Timothy P. O'Toole,* Deputy, *Janet S. Bessemer,* Deputy, and *James P. Logan,* Deputy, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, *Stuart J. Newman,* Deputy, and *Robert E. Wieland,* Deputy, Carson City, for Respondent.

*Michael Pescetta,* Las Vegas, for Amicus Curiae Nevada Appellate and Postconviction Project.

*Laura Wightman FitzSimmons,* Las Vegas, for Amicus Curiae Nevada Trial Lawyers Association.

*Kenneth C. Cory,* Las Vegas, for Amicus Curiae Nevada Attorneys for Criminal Justice.

---

[2]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.

## OPINION

*Per Curiam:*

On September 22, 1988, the bodies of Charles Beatty ("Beatty") and James Robertson ("Robertson") were found in the desert. Beatty's body was discovered in a trash can, while Robertson's decomposing corpse lay in a ravine wrapped in a

blanket. Both victims were shot in the back of the head. Libby v. State, 109 Nev. 905, 908, 859 P.2d 1050, 1052 (1993) *vacated,* Libby v. Nevada, 516 U.S. 1037, 116 S. Ct. 691 (1996).

On September 24, 1988, in Higbee, Missouri, appellant Roger A. Libby ("Libby") was arrested approaching Beatty's Chevrolet Blazer. A search of the Blazer and Libby's person uncovered Beatty's driver's license, wallet, checkbook, and credit cards. Additionally, blood-stained swatches taken from the carpet in the Blazer were consistent with Beatty's blood type. Libby was later charged with two counts of first degree murder with the use of a deadly weapon and five counts of grand larceny. *Id.* at 909, 859 P.2d at 1053.

Jury selection commenced January 29, 1990. Both counsel individually questioned twenty-three members of the venire before twelve passed for cause. At that point, the judge permitted the prosecution to exercise its first peremptory challenge against a female. Another eight members of the venire were individually examined until the prosecution excused another female with its second peremptory. Three more females followed as the third, fourth, and fifth members struck from the venire. The prosecution waived its sixth peremptory challenge.

When the time arrived for the prosecution to exercise its seventh strike, the following dialogue occurred:

> MR. BULLOCK [Prosecutor]: Your Honor, the State would like to thank and excuse [another female juror].

> MR. McCARTHY [Defense Counsel]: The defendant objects to that peremptory, Batson type objection. State exercised six and waived one. All six have been women and I think there ought to be some type of explanation.

> THE COURT: I'll cite to you the case I cited previously, State versus Terry, 391 Northwest 2nd 569, 1986.
>
> It is not unusual for a person to dismiss peremptorily a juror he's not sure can return a death sentence.
>
> In all fairness I want to tell you about that case. I don't know what his reason is but—

> MR. BULLOCK: Your honor, I don't think I have to give a reason, and I would like the Court's ruling first on the application of Batson versus Kirk [sic].
>
> It is my understanding that Batson versus Kirk [sic] that the only time that the prosecution has to give an explanation, if there's a minority being excused and the defendant is a member of that minority group.
>
> In this case it is clearly shown and I think the Court can take judicial notice that women are a majority of the popula-

tion of the society and the defendant is a man and there's absolutely no minority conflicts nor members of the group that's excused. If anything, they are the ones that exert the Batson problem because they are excusing all men.

THE COURT: Well, I don't make the ruling, Batson versus Kirk [sic], I won't take judicial notice of those things because I don't think I can accept what's occurred, the race of the defendant—this doesn't come up. Batson versus Kirk [sic] dealt with a racial issue. I know of no case that says anything about excluding men or women. I don't think it's forthcoming. That would be the Court's ruling for now.

The prosecution waived its eighth and final peremptory challenge.[1] On February 6, 1988, a jury consisting of seven men and five women was empaneled to decide the matter.

The trial concluded April 17, 1990, with the jury returning guilty verdicts on all counts. *Libby,* 109 Nev. at 910, 859 P.2d at 1053. Libby received a death sentence for each murder.

Libby appealed and on September 9, 1993, this court affirmed the convictions and sentences. Libby filed a petition for rehearing, claiming the court failed to consider certain assignments of error. During the pendency of this petition, Libby filed a motion for supplemental briefing addressing J.E.B. v. Alabama ex. rel. T.B., 511 U.S. 127 (1994). In *J.E.B.,* the United States Supreme Court extended the protections of Batson v. Kentucky, 476 U.S. 79 (1986), by holding that gender, like race, could not serve as a basis for "juror competence and impartiality." *J.E.B.,* 511 U.S. at 129.

On June 27, 1995, this court summarily denied the petition for rehearing and motion to file supplemental authorities. Thereafter, on September 22, 1995, Libby filed a petition for writ of certiorari to the United States Supreme Court. In a January 8, 1996 order, the Supreme Court vacated this court's opinion in *Libby* and "remanded to the Supreme Court of Nevada, for further consideration in light of J.E.B. v. T.B., 511 U.S. ...... (1994)." Libby v. Nevada, 516 U.S. 1037, 116 S. Ct. 691 (1996).

We begin with the proposition enunciated by the United States Supreme Court in *J.E.B.:* "Today we reaffirm what, by now, should be axiomatic: Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where . . . the discrimination serves to ratify and

---

[1]In a capital murder trial, pursuant to NRS 175.061(4), the prosecution and defense are entitled to one peremptory challenge during the selection of alternate jurors. The prosecution struck a female from the alternate juror venire. Accordingly, two males sat as alternate jurors.

perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *J.E.B.,* 511 U.S. at 130-31. Libby contends that the State violated his equal protection rights when it "set about eliminating as many women as possible from the jury, apparently based on the stereotypical view that women are somehow less capable of returning death sentences than men."

In support of this assertion, Libby points to three factors. First, petitioner directs the court's attention to the numerical disparity between the number of women peremptorily dismissed versus the number of men. Second, Libby charges that the nature and tone of the prosecutor's voir dire questioning demonstrated gender bias. Third, appellant notes that during jury selection the court stated that "[i]t is not unusual for a person to dismiss peremptorily a juror he's not sure can return a death sentence." Libby contends that this shows the trial court's approval of the prosecution's actions. Taken in their totality, Libby argues that these factors establish purposeful discrimination in the voir dire process.

Although *J.E.B.* controls the ultimate disposition of the instant matter, *Batson* and its progeny still provide the framework for evaluating the constitutionality of peremptory challenges. *See J.E.B.,* 511 U.S. at 144-45. A *Batson* inquiry is triggered when the movant establishes a prima facie case of intentional discrimination. *Batson,* 476 U.S. at 96. While a "totality of the relevant circumstances" standard determines if the requisite showing is made, courts may specifically consider whether "a pattern of strikes against [women] jurors included in the venire might give rise to an inference of discrimination." *Id.* at 97. *See also J.E.B.,* 511 U.S. at 129; Turner v. Marshall, 63 F.3d 807, 811-814 (9th Cir. 1995). "Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." *Batson,* 476 U.S. at 97.

We conclude that Libby established a prima facie case of intentional discrimination. When a significant proportion of peremptories exercised by the State is used to remove members of a cognizable group, it tends to support a finding of purposeful discrimination. The State's use of seven out of nine peremptories against female jurors not only established a prima facie case of discrimination, but was a violation of the Equal Protection Clause. *J.E.B.,* 511 U.S. at 146. In Doyle v. State, 112 Nev. 879, 888, 921 P.2d 901, 907 (1996), this court concluded,

"Presumably the exclusion of three-out-of-four black prospective jurors is sufficient to make out a prima facie *Batson* violation." In Haynes v. State, 103 Nev. 309, 316, 739 P.2d 497, 502 (1987), this court held that the use of peremptories to exclude the only two black veniremen established a prima facie case of discrimination. Finally, the United States Court of Appeals for the Ninth Circuit found that a defendant's use of all seven peremptory challenges to strike men from the venire established a prima facie case of gender bias. United States v. De Gross, 913 F.2d 1417, 1419 (9th Cir. 1990).

Libby bolsters his position by pointing to voir dire questioning which illustrates the prosecutor's assumption that women are somehow less capable of returning a death sentence. For example, women who were ultimately struck from the venire were asked if they had the "intestinal fortitude" or "internal makeup" to impose the death penalty. Some were asked if "deep inside" or "emotionally, could you bring yourself to do it and say I vote for death." Similar questions were not propounded to male members of the venire. We conclude that a reasonable inference from the tenor of these questions is that the prosecutor appeared to accept the premise that women are somehow less qualified jurors in capital cases.

Ironically, almost every woman thoroughly questioned and excused by the State claimed she could follow the court's instructions and impose the death penalty. By comparison, those men who stated they too could impose the death penalty did not receive the same type of extensive questioning regarding their emotions, intestinal fortitude, and internal makeup. For example, the closest the State came to asking an empaneled male jury member about his ability to return a death verdict was the following:

> Q  My question to you is, should you as a juror get to that point where you in your own mind feel that the law has been satisfied and that you believe the death penalty could be imposed, the question I have to you is, would you do it?
> A  Yes.

Furthermore, even the female members retained for service received the more intrusive and longer line of examination. We conclude that the apparent disparate treatment during voir dire questioning further supports a prima facie case of discrimination.

Finally, Libby offers the remarks of the trial court during voir dire which he asserts show an atmosphere of discrimination. The district court stated, "It is not unusual for a person to dismiss peremptorily a juror he is not sure can return a death sentence." For the claim to have merit, the judge's statement must be

imputed to the State, but the prosecutor never adopted the judge's statement. The record clearly reflects that the prosecutor interrupted the judge and stated, "It's my understanding that . . . the only time that the prosecution has to give an explanation [is] if there is a minority being excused and the defendant is a member of that minority group." Although Libby's final argument does nothing to advance a prima facie showing, we conclude that the use of peremptories to strike only women jurors from the jury pool and the prosecutor's contrasting examination of males and females in the venire are sufficient to establish a prima facie case of gender discrimination in the State's use of peremptory challenges.

The State argues that defense counsel's failure to object to the first five peremptory strikes constituted a waiver, and therefore, Libby could not rely on those removals to establish a pattern. This assertion is without merit. To suggest that a pattern of strikes cannot be established without preserving each one with an objection is untenable.[2] Neither *Batson* nor any case following it imposes such a requirement, and the State cites to none in its brief. Indeed, *Batson* states that a judge may consider *all* relevant circumstances, including a pattern of strikes. *Batson,* 476 U.S. at 96-97. Therefore, the State fails to rebut Libby's prima facie case.

Once the movant makes a prima facie showing, the burden shifts to the State to explain the basis for the strike. *J.E.B.,* 511 U.S. at 145. The prosecution satisfies its burden if the offer of proof is grounded in factors other than gender. *Id.* However, the proffered explanation cannot serve as a pretext to an invidious basis of removal. *Id.* The trial court must then enter a finding of whether intentional discrimination existed. *Batson,* 476 U.S. at 98.

At this juncture in the *Batson* analysis, the instant matter presents a case of first impression in this state. An exhaustive search of this court's jurisprudence reveals an absence of case law where an objector made out a prima facie case, but the trial court did not require a race or gender neutral explanation. When Libby lodged his objection, the district court refused to require

---

[2]To illustrate the faulty logic of the State's position, consider the absurd result reached with the first peremptory exercised. Unless an attorney were clairvoyant or the party exercising the peremptory volunteered a discriminatory basis, the first juror struck could never be part of a series establishing a *Batson* violation. That juror's removal would always be waived.

the State's explanation and stated, "I don't make the ruling . . . Batson versus Kirk [sic] dealt with a racial issue. I know of no case that says anything about excluding men or women. I don't think it's forthcoming." As a result, this court is left with a prima facie case of gender discrimination, and there is nothing in the record to determine the prosecution's reasons for striking only women from the venire.

Libby argues that the only fair and equitable remedy is a new trial. The State contends that if further information is necessary to resolve the question of discrimination in jury selection, the case should be remanded for a *Batson* hearing. While the lapse of time may present more difficulties than the usual *Batson* hearing, we remand this matter for an evidentiary hearing.

"If the district court finds that the passage of time has rendered such a hearing meaningless, it shall vacate defendant's convictions and schedule a new trial." United States v. Thompson, 827 F.2d 1254, 1262 (9th Cir. 1987). However, the prosecution must be given the opportunity to respond and defend its actions. *Batson,* 476 U.S. at 97.[3]

---

[3]The Honorable A. William Maupin, Justice, did not participate in the decision of this appeal.