ROGER LIBBY, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 31798

April 2, 1999 975 P.2d 833

---

[Rehearing denied July 13, 1999]

*Steven G. McGuire,* State Public Defender, *James P. Logan,* Chief Appellate Deputy, and *Harriet E. Cummings,* Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *David Allison,* District Attorney, and *Conrad Hafen,* Deputy District Attorney, Humboldt County, for Respondent.

# OPINION

*Per Curiam:*

## FACTS

On September 22, 1988, Charles Beatty's and James Robertson's dead bodies were found in the desert near Winnemucca, Nevada. Two days later, appellant Roger Libby was arrested for the murders. Libby v. State, 109 Nev. 905, 908-09, 859 P.2d 1050, 1052 (1993) (*Libby I*).

Jury selection for Libby's trial began on January 29, 1990. The parties' attorneys questioned each potential juror individually. Prosecutor Jack Bullock used six of his eight peremptory challenges on women; the remaining two challenges were waived. He also utilized his one peremptory challenge available for the alternate jurors on a woman. After the state exercised its sixth peremptory challenge, the defense objected, citing Batson v. Kentucky, 476 U.S. 79 (1986), which holds that the Equal Protection Clause of the United States Constitution forbids utilizing a peremptory challenge to exclude a juror on the basis of race. Because the United States Supreme Court had not yet extended *Batson* to include discrimination based on gender, Bullock refused to provide any reasons for his peremptory challenges. The district court agreed with Bullock's analysis and erroneously predicted that no case forbidding gender discrimination in jury selection would be forthcoming. The petit jury consisted of seven men, five women, and two male alternates.

The trial began on April 4, 1990, and the jury returned its verdicts on April 17, 1990, finding Libby guilty of two counts of first degree murder with the use of a deadly weapon, one count of robbery with the use of a deadly weapon, and five counts of grand larceny. At the conclusion of the penalty phase, the jury found that two aggravating circumstances for each murder (that the murders

occurred during the commission of a robbery and that the murders involved depravity of mind) outweighed one mitigating circumstance (Libby's family background). The jury returned a verdict of death for each count of first degree murder.

On direct appeal, this court affirmed Libby's conviction and death sentences. *Libby I*, 109 Nev. 905, 859 P.2d 1050. Libby filed a petition for writ of certiorari with the United States Supreme Court, alleging that this court incorrectly ignored J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994), which prohibits discriminatory use of peremptory challenges during jury selection based on gender. The Supreme Court granted certiorari, vacated *Libby I,* and remanded the case to this court "for further consideration in light of J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994)." Libby v. Nevada, 516 U.S. 1037 (1996).

Pursuant to the Supreme Court's order, this court issued an opinion remanding this matter to the district court for an evidentiary hearing. Libby v. State, 113 Nev. 251, 934 P.2d 220 (1997) (*Libby II*). Citing *J.E.B.,* this court concluded that Libby had successfully established a prima facie case of discrimination, the first step in a challenge to the prosecutor's use of peremptory challenges.[1] However, because Bullock did not offer any reasons for his peremptory challenges, this court could not review the gender discrimination challenge as required by *J.E.B.* Accordingly, this court decided that the proper procedure was to remand this matter to the district court to conduct an evidentiary hearing, providing the state an opportunity to present any gender neutral reasons it may have had. *Id.* at 258, 934 P.2d at 224.

The district court conducted the evidentiary hearing on November 12, 1997, almost eight years after the January 1990 jury selection for Libby's trial. The state called as a witness the lead prosecutor Bullock, and Libby called the co-prosecutor Stuart Newman and Libby's trial counsel, Terrence McCarthy. After the hearing, on December 8, 1997, the district court issued its findings of fact and conclusions of law, denying a new trial and concluding that the state's gender neutral reasons were sufficient to rebut Libby's prima facie case. Libby subsequently filed his timely notice of appeal.

---

[1]Specifically, this court stated, "The State's use of seven out of nine peremptories against female jurors not only established a prima facie case of discrimination, but was a violation of the Equal Protection Clause." *Libby II,* 113 Nev. at 255, 934 P.2d at 223. By this language, we recognized that the United States Supreme Court held that gender discrimination in jury selection is unconstitutional under the Equal Protection Clause. We did not intend to imply that a prima facie showing of gender discrimination in and of itself establishes a violation of the Equal Protection Clause. As outlined in *Libby II* and here, other steps are required before determining whether purposeful discrimination, violative of equal protection, occurred.

## DISCUSSION

In *J.E.B.*, the state used nine of ten peremptory challenges to exclude men from the jury in a paternity trial, resulting in an all-female jury. 511 U.S. at 129. The Supreme Court held, "Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where, as here, the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *Id.* at 130-31. Three steps are required in a gender discrimination challenge: first, the defendant must establish a prima facie case of gender discrimination; second, the state must offer gender neutral reasons for the use of peremptory challenges; and third, the trial court must evaluate the evidence to determine if the state's reasons sufficiently rebut the prima facie case or whether the proffered reasons are merely a pretext for purposeful gender discrimination. *Id.* at 144-45; *see Batson*, 476 U.S. at 93-94.

This court has already held that Libby established a prima facie case of gender discrimination. *Libby II,* 113 Nev. 251, 934 P.2d 220. The instant appeal concerns the district court's findings with regard to steps two and three, as well as issues pertaining to the evidentiary hearing itself.

I. *The evidentiary hearing was not meaningless*

In *Libby II,* after remanding for an evidentiary hearing, this court instructed, " 'If the district court finds that the passage of time has rendered such a hearing meaningless, it shall vacate defendant's convictions and schedule a new trial.' " 113 Nev. at 258, 934 P.2d at 224 (quoting *United States v. Thompson*, 827 F.2d 1254, 1262 (9th Cir. 1987)). Libby contends on appeal that the district court erred by failing to find that the hearing was meaningless which would require a new trial. Specifically, Libby contends that Bullock could not independently recall what occurred during jury selection, including the demeanor of the prospective jurors and his reasons for exercising the peremptory challenges. Libby claims that because almost eight years had passed since the jury selection, Bullock could only speculate in hindsight when reviewing the voir dire transcripts as to why he excused the women from the jury. Additionally, neither Newman nor McCarthy could remember much of the selection process. Accordingly, Libby argues that he was denied a meaningful hearing and the district court should have ordered a new trial.

In Turner v. Marshall, 121 F.3d 1248, 1250 (9th Cir. 1997), *cert. denied,* 522 U.S. 1153, 118 S. Ct. 1178 (1998), the United States Court of Appeals for the Ninth Circuit had concluded in a prior proceeding that the defendant established a prima facie case of racial jury discrimination and remanded for an evidentiary hearing to present and evaluate the state's race neutral reasons. The hearing was conducted six years after jury selection, and the trial court determined that no purposeful discrimination occurred. Although the court acknowledged the prosecutor's diminished memory, on appeal the court concluded "that the transcripts of voir dire and the evidentiary hearing yield a sufficient basis for review" of the lower court's decision. *Id.* at 1251. The court noted that the prosecutor was able to generally recall the trial, her review of the transcripts refreshed her recollection, and she was able to articulate her reasons for exercising the peremptory challenges at issue. Accordingly, the court concluded that the hearing was adequate because "the defense has been afforded ample opportunity 'to point out false factual assumptions, or improper motivations in the prosecution's explanations.'" *Id.* (quoting United States v. Alcantar, 897 F.2d 436, 438 (9th Cir. 1990)).

In Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992), the petitioner asserted that a *Batson* hearing occurring six years after the jury selection process was meaningless. The United States Court of Appeals for the Second Circuit noted that such a passage of time could impair the trial court's ability to determine the prosecutor's state of mind when excluding potential jurors. *Id.* (citing United States v. Alvarado, 923 F.2d 253, 256 (2d Cir. 1991)). The court concluded, however, that the trial court "will not inevitably be unable to evaluate the prosecutor's intent in exercising his peremptory challenges, despite the absence of contemporaneous evidence, and 'if appropriate findings may conveniently be made, this should be done.'" *Id.* (quoting *Alvarado,* 923 F.2d at 256). Because the trial court heard the prosecutor testify and found that he could remember his reasons for striking the jurors, the court held that the hearing was not meaningless. *Id.*

We conclude that *Turner* and *Brown* are instructive on this issue. In both of those cases, the hearing occurred six years after jury selection, almost as long as in the present matter, and the appellate courts concluded that the hearings were not meaningless. In the current case, the defense had ample opportunity to cross-examine Bullock in order to challenge both his credibility as well as his memory. Although Bullock was unable to remember every detail, such as each potential juror's clothing or exact demeanor, we conclude that the district court did not abuse its discretion in determining that Bullock was able to sufficiently recall and articulate his reasons for exercising his peremptory challenges. We

acknowledge Libby's concern over Newman's and McCarthy's diminished memories; however, Bullock alone made the decision to exercise a peremptory challenge, and he was able to remember his reasons for doing so. While eight years is a long time, we conclude that the hearing was not meaningless and the district court could assess Bullock's credibility when determining whether sufficient gender neutral reasons existed.

II. *The district court did not err in its evidentiary rulings at the hearing*

A district court's decision to admit or exclude evidence rests within its sound discretion and will not be disturbed unless it is manifestly wrong. Daly v. State, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983).

At the evidentiary hearing, Libby attempted to question Bullock about male venire persons who were examined during voir dire but were not ultimately on the jury. After the state objected, the district court precluded this inquiry. On appeal, Libby argues that the inquiry would have tested whether Bullock could independently recall the voir dire process in this case. Libby further argues that the inquiry would have revealed whether Bullock questioned the men in the same manner as the women who were excused. According to Libby, this would have shown that Bullock's reasons for excusing women were a mere pretext if the male venire persons who ultimately were not on the jury had the same characteristics but were not stricken by the state.

We conclude that the district court did not err by denying Libby's request to question Bullock about male venire persons. First, Libby sufficiently tested Bullock's memory with regard to the excused women, as well as all the members of the jury, both men and women. Second, it is well established that if a stricken juror shares with a *seated juror* the same characteristics that the prosecutor offers as a gender neutral reason for exclusion, this is a factor to determine whether the neutral reasons were a pretext for discrimination. *Turner,* 121 F.3d at 1251-52. Here, however, Libby attempted to compare the stricken women with men who were *not* seated on the jury. Those men were either excused for cause or challenged by the defense. Therefore, this was not an appropriate comparison. Accordingly, the court's decision to preclude this inquiry was not manifestly wrong.

The district court also precluded Libby from questioning Bullock about his peremptory challenges of women in a different case, the Ronald Milligan death penalty trial. Libby argues that he should have been allowed to pursue this line of questioning in order to prove that Bullock systematically excludes women from juries. We conclude that the district court correctly determined that this inquiry was irrelevant to the instant matter. The purpose of the hearing was to determine Bullock's reasons for excluding women from the jury at Libby's trial, not at Milligan's trial. Bullock may have had a different trial strategy and different reasons for using his peremptory challenges at each trial. Accordingly, the district court did not abuse its discretion.

Prior to the evidentiary hearing, Bullock reviewed the voir dire transcripts of the challenged women and took notes to help "jog" his memory. At the hearing, Bullock had the notes with him. On appeal, Libby contends that Bullock did not testify from his memory but rather from his notes.

NRS 50.125 permits a witness to refresh his memory with a writing. Bullock was properly permitted to review his notes to refresh his memory after testifying that he did not remember the answer to specific questions. Libby complains that Bullock in fact did not remember anything, even after reviewing his notes. Rather, Libby contends that Bullock made up his reasons for excusing women based on his recent review of the transcripts and notes and not based on his independent recollection of the jury selection. We disagree.

The record of the hearing demonstrates that Bullock explained when his memory was refreshed and therefore testified pursuant to his memory. He also explained when he still could not remember a certain fact even after reviewing his notes. Additionally, the district court was in the best position to determine Bullock's credibility regarding his memory. The court obviously believed Bullock when he testified that he remembered his reasons for exercising the peremptory challenges. Accordingly, no error occurred.

III. *The district court's use of the word "holistic" does not require reversal*

Three times in the district court's written findings of fact and conclusions of law, the court indicated it took a "*holistic* look at the record," a "*holistic* view of the testimony," and a "*holistic*

review'' when evaluating the evidence presented at the hearing. (Emphasis added.) Libby contends that the district court utilized a standard of review that does not exist and, therefore, this case must be reversed and remanded for a new trial.

In both Hernandez v. New York, 500 U.S. 352, 363 (1991), and *Batson,* 476 U.S. at 93-94, the Supreme Court held that the trial court must look at the ''totality of the relevant facts'' when reviewing the evidence presented in a jury discrimination challenge. Although the district court in this case erroneously used the word ''holistic'' instead of the proper phrase ''totality of the relevant facts,'' reversal is not required. The court clearly articulated that it viewed all the facts and testimony presented in the record and at the hearing. This is exactly what it was required to do. The word ''holistic'' means: ''relating to or concerned with wholes or with complete systems rather than with the analysis of, treatment of, or dissection into parts.'' *Webster's Ninth New Collegiate Dictionary* 576 (1991). The court's use of the word ''holistic'' merely referred to the fact that the court reviewed and considered the ''whole'' record, not just selected parts.

Within this contention in his opening brief, Libby also takes issue with the district court's failure to use the word ''pretext'' in its evaluation of the evidence. This omission does not require reversal. Even *Batson,* the case which originally defined the three-step analysis required in a jury discrimination challenge, did not use the word ''pretext'' to articulate the third step. 476 U.S. at 98 (''The trial court then will have the duty to determine if the defendant has established purposeful discrimination.''); *see also Hernandez,* 500 U.S. at 359 (''Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.''). While the district court's order here was not very clear in articulating steps two and three, the court did evaluate the evidence and determine that the state's gender neutral reasons were sufficient to prove that no purposeful discrimination existed. Inherent in such an evaluation is a review of whether the state's reasons were a mere pretext for purposeful discrimination. We take this opportunity to instruct the district courts of this state to clearly spell out the three-step analysis when deciding a *Batson/J.E.B.*-type issue.

IV. *The district court did not err in concluding that the state provided sufficient gender neutral reasons for excluding the challenged women*

The Supreme Court in Purkett v. Elem, 514 U.S. 765, 767-68 (1995), held that a neutral reason need not be persuasive or even

plausible. A legitimate reason for excluding a juror "is not a reason that makes sense, but a reason that does not deny equal protection." *Id.* at 769. " 'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed . . . neutral.' " *Id.* at 768 (quoting *Hernandez,* 500 U.S. at 360).

In this case, Bullock gave several reasons for challenging each woman, although he qualified his list by stating that some reasons for each woman were more instrumental in his decision than other reasons. For example, Bullock explained that each of the excluded women expressed at least some hesitancy in imposing the death penalty and he did not believe that further voir dire examination alleviated that hesitancy; this was the most decisive factor for his use of the peremptory challenges.

Bullock testified that he wanted "strong" jurors who had no hesitancy about the possibility of imposing a death sentence, could grasp legal concepts despite the fallacies depicted on television, and could give their full attention to a lengthy trial. He further testified that he never purposely excluded women because he knew that women have the same ability to be good jurors as men and sometimes women are even "stronger" about imposing a death sentence. He stated that the five women who remained on the jury were all very "strong" people and he was satisfied with the final selection of jurors. Overall, the reasons Bullock proffered do not inherently contain any discriminatory motive. Accordingly, step two, providing gender neutral reasons, was satisfied.

With regard to step three, the trial court's evaluation of whether purposeful discrimination exists, the law is well settled that a reviewing court will give great deference to the trial court's decision. *Hernandez* held that deference is the best standard because the trial court's decision turns largely on the credibility of the prosecutor. 500 U.S. at 365. Accordingly, a trial court's findings will not be overturned unless they are "clearly erroneous." *Id.* at 369; *see also Turner,* 121 F.3d at 1251; Thomas v. State, 114 Nev. 1127, 1137, 967 P.2d 1111, 1118 (1998).

After a review of the record, including the voir dire transcripts, the evidentiary hearing transcripts, and the district court's findings of fact and conclusions of law, we conclude that the district court's decision that there was no purposeful discrimination in the state's use of peremptory challenges was not clearly erroneous. The district court judge had the benefit of observing firsthand the jury selection process, as well as the evidentiary hearing. He was in the best position to evaluate Bullock's credibility and the

excused jurors' demeanor and answers. Accordingly, the district court's decision was not clearly erroneous, and reversal is not warranted.[2]

## CONCLUSION

We conclude that the hearing was not meaningless, the district court did not err in excluding certain lines of questioning by Libby, and the court's written order was adequate. We further conclude that the state provided sufficient gender neutral reasons for using peremptory challenges on the excused women. Accordingly, we affirm the district court's order denying Libby a new trial.

LEAVITT, J., concurring:

I concur with the majority's opinion in this case, but write separately to point out problems trial judges may have in the future in dealing with *Batson* challenges. It has always been the law that "[e]ach party is . . . given the right to challenge a certain number of jurors peremptorily or without assigning any reason." Oliver v. State, 85 Nev. 418, 423, 456 P.2d 431, 434 (1969); *see also* NRS 175.051. The recent rulings by the United States Supreme Court have placed limitations on this rule.

The group allegedly discriminated against in this case was women. The challenge was made even though the jury consisted of five women and the person making the challenge was a male. Under the new rulings it is not necessary that a person be a member of a group allegedly being discriminated against. A white person can challenge the action even though African-Americans are being systematically excluded from the jury by peremptory challenges. Powers v. Ohio, 499 U.S. 400 (1991); Holland v. Illinois, 493 U.S. 474 (1990); Peters v. Kiff, 407 U.S. 493 (1972). Furthermore, the rule applies to defendants as well as prosecutors. Georgia v. McCollum, 505 U.S. 42 (1992).

---

[2]We acknowledge Libby's concern that at the evidentiary hearing, co-prosecutor Stuart Newman stated, "I don't say this in a facetious manner, but I'm not sure as a prosecutor in a case you really want a nice young lady to sit on a death penalty case." At first blush, this quote appears very damaging to the state; however, this statement, as used by Libby, is taken out of context.

Newman testified that he recommended to Bullock that a particular venire person, a 20-year-old self-described "daddy's girl" who still lived with her parents, be stricken from the jury. Newman reasoned that because this woman had not had much life experience and because she did not appear to be very "strong," Newman did not want her on the jury. Bullock disagreed with Newman, but the issue became moot when that venire person was excused for cause by the defense. After a review of Newman's testimony as a whole, it is evident that when he made the above-quoted statement, he was referring only to that one woman and was not generalizing about all the female venire persons.

At the time of the jury selection, the United States Supreme Court had not named gender as a basis for a *Batson* challenge. It later declared that gender was a cognizable group that may not be discriminated against. The trial judge must now anticipate what group of potential jurors may some day be included under the *Batson* ruling. If defendants or prosecutors decide to pick a jury of people between the ages of 25 and 50, are they discriminating on the basis of age? Some prosecutors believe persons of a certain ethnic background make better jurors for the state while other attorneys believe other ethnic groups would favor the defense. Would peremptory challenges based on ethnic groups be purposeful discrimination and prohibited under *Batson*? What members of a cognizable group can the judge prevent from systematic exclusion? Trial lawyers can no longer exercise a peremptory challenge "without assigning any reason."

Furthermore, the trial judge may be called on to decide the challenge years later (eight years in this case) and if any hearing is meaningless at that time the court must vacate a defendant's conviction and schedule a new trial. Libby v. State, 113 Nev. 251, 258, 934 P.2d 220, 224 (1997) (citing United States v. Thompson, 827 F.2d 1254 (9th Cir. 1987)).

Therefore, this court should give great deference to the trial court's decision. The judge is the one who presides over the jury selection process and observes the credibility of the prosecutor, the defense attorney and the witnesses at any evidentiary hearing. The judge's findings should not be overturned unless they are clearly erroneous. Hernandez v. New York, 500 U.S. 352, 365 (1991).

I would defer to the trial judge's decision in this case and affirm the order denying a new trial.