# IN THE SUPREME COURT OF THE STATE OF NEVADA

AMRIT-PAUL SINGH ATTWAL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67170

FILED

NOV 2 2 2016

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of battery and one count of felony coercion. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Amrit-Paul Attwal first contends that the district court erred in denying his challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), to the State's use of peremptory challenges to remove three male veniremembers. A party may not use peremptory challenges to discriminate on the basis of a veniremember's gender. *Watson v. State*, 130 Nev., Adv. Op. 76, 335 P.3d 157, 165 (2014); *accord J.E.B. v. Alabama*, 511 U.S. 127, 143-46 (1994) (expanding the scope of *Batson* to include gender discrimination). There are three steps in determining whether there has been a *Batson* violation: first, the opponent of the strike must establish a prima facie case of discrimination, then the proponent must offer a neutral explanation, and finally, the district court must decide whether the opponent has demonstrated purposeful discrimination. *Watson*, 130 Nev., Adv. Op. 76, 335 P.3d at 165. We review the district court's decision for clear error. *Id.*

The district court found that Attwal failed to establish a prima facie case of discrimination. Attwal argues that the district court's conclusion was in error. Where there is an allegation of gender

discrimination, the opponent of the peremptory challenges may satisfy the first *Batson* step by establishing a pattern of strikes against a targeted group that is sufficient to support an inference of discrimination. *Id.* at 166. This can be accomplished by "compar[ing] the percentage of the *Batson* respondent's peremptory challenges used against targeted-group members with the percentage of targeted-group members in the venire."[1] *Watson*, 130 Nev., Adv. Op. 76, 335 P.3d at 168 (quotation marks omitted). If gender is irrelevant to the challenges, then the percentage of challenges used against each gender should roughly correspond to the total percentage of each gender in the venire. *Id.* Here, at the time of the challenge, the State had used the first three out of five, or 60%, of its strikes to remove men, who comprised only 39% of the venire. This is not a rough parallel but rather prima facie evidence of gender discrimination. *Cf. id.* at 168 (concluding that the percentage of strikes the State used against women (67%) was "roughly parallel" to the percentage of women in the venire (56%) and thus the strike opponent did not demonstrate a prima facie case of discrimination against women). We therefore conclude

---

[1] The State acknowledges the *Watson* test for prima facie discrimination but contends that it fails to consider context because "the percentage of men in relation to the overall panel" did not change once Attwal exercised his peremptory strikes. The State cites no authority for this proposition, and it is contrary to established law. The purpose of the *Watson* test is to provide context for the raw numbers, which this court concluded had been lacking in the analysis in *Libby v. State*, 113 Nev. 251, 934 P.2d 220 (1997). To follow the State's suggestion would introduce variables, such as the nature of the defendant's peremptory challenges, which are irrelevant to whether the State exercised a peremptory challenge in a discriminatory manner. *See Miller-El v. Dretke*, 545 U.S. 231, 245 n.4 (2005) (noting that the underlying question was not the defense's opinion of the potential jurors but rather whether the State was acting in a discriminatory manner).

SUPREME COURT
OF
NEVADA

(O) 1947A

2

that the district court clearly erred in determining that Attwal had failed to satisfy *Batson*'s first step.

The district court failed to explicitly rule at the second and third *Batson* steps. *See Kaczmarek v. State*, 120 Nev. 314, 334, 91 P.3d 16, 30 (2004) ("We have directed Nevada's district courts to clearly spell out the three-step analysis when deciding *Batson*-type issues." (internal quotations omitted)); *see also Nunnery v. State*, 127 Nev. 749, 783, 263 P.3d 235, 258 (2011) (admonishing the district court for not having made a clearer statement of its reasoning). However, turning to the second step, the State satisfied its burden below by offering gender-neutral explanations. Because the record is sufficient to do so, we review whether the district court clearly erred in concluding that the State's explanations were pretextual. *See Nunnery*, 127 Nev. at 783-84, 263 P.3d at 258-59 (reaching the third *Batson* step even though the challenge opponent did not respond to the State's neutral explanation at trial); *cf. Hawkins v. State*, 127 Nev. 575, 579, 256 P.3d 965, 968 (2011) (noting the impossibility of reaching the third step where the strike opponent offered no analysis at either trial or on appeal).

The record supports Attwal's argument that the State's explanation as to juror number 55, B. Bowman, a male, is pretextual. The State explained below that the victim intended to testify as to how it felt when Attwal strangled her, no medical experts were going to testify, and it did not "want any type of medical knowledge" or "anything that [Mr. Bowman is] studying in his medical field to color his perception of those events." Attwal argues that the reasons the State gave to remove Mr. Bowman could have applied equally to female veniremembers but the State did not strike those female veniremembers.

In comparison, Attwal argues that juror number 89, S. Gordon, was a registered nurse at a school and "would have had extensive medical knowledge from her R.N. degree," and that juror number 56, L. Walters, was a veterinarian and thus had an extensive background in science and medicine. The State responds that Ms. Gordon's "focus was clearly on education, and working as a school nurse does not run the same risk of a student misapplying newly-learned medical knowledge." The State also responds that Ms. Walters bachelor's degree was in agriculture so that "her background in 'science' is clearly not analogous to that of a medical student" and that she "did not pose the same risk" as Mr. Bowman because her "understanding of animal anatomy would have little bearing on the strangulation" of the victim. The State's reasoning is not supported by the record. Mr. Bowman had a bachelor's degree in business (no evidence suggested it was science-oriented) and was in a post-baccalaureate program to prepare him to apply to medical school. He was not a medical student, and he never indicated what types of classes he had taken or whether he had any medical knowledge. However, Ms. Gordon had a bachelor's degree in nursing and was working as a nurse, not a teacher. And Ms. Walters' science background included not just a bachelor's degree in agriculture but also a doctorate in veterinary medicine. Because the State's comparisons of Mr. Bowman to Ms. Gordon and Ms. Walters are contradicted by the record, we conclude they are pretextual. *See Miller-El*, 545 U.S. at 265 (indicating explanations may be pretextual when they "do not hold up and are so far at odds with the evidence"); *Conner v. State*, 130 Nev., Adv. Op. 49, 327 P.3d 503, 510 (2014), *cert. denied*, 135 S. Ct. 2351 (2015) ("A race-neutral explanation that is belied by the record is evidence of purposeful discrimination."). We

therefore conclude that the district court clearly erred in denying Attwal's *Batson* challenge, and he is entitled to a new trial.

Attwal next contends that insufficient evidence supported his conviction for coercion with use of force. Sufficient evidence supports a conviction when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (emphasis in original) (quotation marks omitted); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Attwal does not claim that the State failed to present sufficient evidence of any element of the offense but rather challenges the quality of the victim's recollection. Such challenges go to the witness's credibility, and any question of credibility is for the jury, not an appellate court. *Rose v. State*, 123 Nev. 194, 202-03, 163 P.3d 408, 414 (2007). We therefore deny relief on this claim.

Attwal next contends that the district court erred in denying his request for a jury instruction on misdemeanor coercion as a lesser-included offense of felony coercion. Because all of the elements of the misdemeanor offense are included in the felony offense, *see* NRS 207.190(2)(a) (providing that coercion becomes a felony "[w]here physical force or the immediate threat of physical force is used"), the misdemeanor offense is a lesser-included offense of the felony. *Rosas v. State*, 122 Nev. 1258, 1263, 147 P.3d 1101, 1105 (2006) ("A lesser offense is included in a greater offense 'when all of the elements of the lesser offense are included in the elements of the greater offense.'" (quoting *Barton v. State*, 117 Nev. 686, 690, 30 P.3d 1103, 1106 (2001))). However, Attwal has not demonstrated that the district court erred. He argues that he was entitled to the misdemeanor-coercion jury instruction since the victim had been

Supreme Court
OF
Nevada

(O) 1947A

5

able to place a call and ask for help, but that is irrelevant to the force element that differentiates between felony and misdemeanor coercion. He also argues that he was entitled to the misdemeanor-coercion jury instruction because the force necessary for felony coercion must be used against the victim rather than an object, and any force here was against the telephone. We reject Attwal's legal premise that the force must be against the victim, because the use of force to hinder the victim in using a tool (here, the telephone) with the intent to prevent the victim from seeking help constitutes felony coercion. *See* NRS 207.190(1)(b), (2)(a).

Finally, to the extent Attwal contends that he was entitled to the misdemeanor-coercion jury instruction because it was his theory of defense, he did not raise that as a basis for the instruction below, so we need not consider that argument on appeal. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

Having concluded that the district court clearly erred in denying Attwal's *Batson* challenge, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

cc: Hon. Michelle Leavitt, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A