# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERTO ANTHONY RAMIREZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73074

FILED

MAY 3 1 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is a direct appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree kidnapping against a person 60 years of age or older causing substantial bodily harm, two counts of robbery against a person 60 years of age or older, burglary with a deadly weapon, burglary, battery with intent to commit robbery against a person 60 years of age or older, and fraudulent use of a credit card. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

### FACTS

This case arose from a police investigation into two brutal burglaries of elderly victims. Based on evidence uncovered during the investigation, as well as the victims' descriptions of the perpetrator, the police suspected that appellant Roberto Ramirez was involved in the burglaries. The police arrested Ramirez on other charges and transported him to the police station for interrogation.

At the beginning of the interrogation, police read Ramirez his *Miranda* rights. Ramirez invoked his right to remain silent and asked for counsel. Questioning did not cease, and Ramirez was never provided counsel. At the end of the five-hour interrogation, Ramirez provided the police with a DNA swab, which ultimately matched DNA found at the scene of the burglaries.

Before trial, Ramirez filed a motion to suppress statements and physical evidence based on *Miranda* and Fourth Amendment violations. The State opposed, clarifying that it did not plan to introduce any of Ramirez's statements at trial, and only intended to introduce the DNA evidence. The district court denied the motion, finding that Ramirez's DNA evidence was nontestimonial and that he gave valid consent to the DNA swab.

Also before trial, in an unrelated series of events, Tristan Conti (later identified as one of the suspects) was killed in an officer shootout. A search of his cell phone revealed incriminating evidence that linked both him and Ramirez to the burglaries. The police later matched Conti's DNA to DNA found at the crime scenes.

After a seven-day trial, the jury found Ramirez guilty on all seven counts. Ramirez now appeals this conviction. Having reviewed Ramirez's contentions and for the reasons discussed below, we affirm the judgment of conviction.

## DISCUSSION

*Ramirez's motion to suppress the biological evidence*

Ramirez contends that the district court erred in denying his motion to suppress the biological evidence (i.e., his DNA swab) on Fifth and Fourth Amendment grounds. We first address Ramirez's Fifth Amendment claim, wherein he argues that the police issued insufficient *Miranda* warnings and improperly continued their interrogation after he invoked his *Miranda* rights, thereby making the resulting biological evidence inadmissible.

To protect a suspect's Fifth Amendment right against self-incrimination, *Miranda v. Arizona* requires officers to inform suspects of their constitutional rights before initiating custodial interrogation. 384

U.S. 436, 444 (1966) (listing four rights a suspect must be informed about prior to questioning). If a suspect invokes his right to remain silent, his request must be "scrupulously honored." *Dewey v. State*, 123 Nev. 483, 490, 169 P.3d 1149, 1153 (2007) (internal quotation marks omitted). If a suspect invokes his right to counsel, all questioning must cease until an attorney is present or the suspect initiates further communication. *Id.*

Here, the officers failed to warn Ramirez that anything he said during the interrogation could be used against him, a warning required by *Miranda*. Moreover, Ramirez unequivocally invoked his right to remain silent and asked for counsel, yet the officers continued to question him in the absence of counsel. They ultimately obtained his consent to a DNA swab. Based on these facts, the district court found multiple *Miranda* violations, but ruled that these violations did not warrant suppression of the resulting DNA evidence. We agree with the district court for the following reason.

*Miranda v. Arizona* sets forth a prophylactic rule intended to protect a defendant's Fifth Amendment right against self-incrimination. 384 U.S. 436 (1966). The Fifth Amendment's core protection extends to "compelled incriminating communications . . . that are testimonial in character." *United States v. Hubbell*, 530 U.S. 27, 34 (2000) (Thomas, J., concurring) (internal quotation marks omitted). It does not extend to nontestimonial communications, nor does it reach "nontestimonial evidence obtained as a result of voluntary statements." *United States v. Patane*, 542 U.S. 630, 637 (2004).

Here, Ramirez consented to the officer's request for a DNA swab. His consent, while communicatory, was not testimonial because it did not, in and of itself, incriminate him. *United States v. Henley*, 984 F.2d

SUPREME COURT
OF
NEVADA

(O) 1947A

3

1040, 1042 (9th Cir. 1993) ("The mere act of consenting to a search—'Yes, you may search my car'—does not incriminate a defendant . . . ."). The resulting biological evidence was also not testimonial because it was by no means a compelled *communication. Schmerber v. California,* 384 U.S. 757, 765 (1966) (holding that blood test evidence does not implicate the Fifth Amendment because "[n]ot even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis").

Therefore, while we disapprove of such a blatant *Miranda* violation, neither Ramirez's consent nor the resulting biological evidence were testimonial in nature, and thus, neither were within the scope of Fifth Amendment protection.

Next, Ramirez contends that the district court erred in denying his motion to suppress on Fourth Amendment grounds. Specifically, Ramirez argues that the collection of his DNA was a warrantless search and that his consent to the search was involuntary.

The collection of a biological specimen is a search for Fourth Amendment purposes. *See State v. Jones,* 111 Nev. 774, 775, 895 P.2d 643, 644 (1995). Therefore, a warrant or recognized exception is required before obtaining a DNA swab from a suspect. *Id.* One such exception is consent, which must be voluntary and not the product of coercion, express or implied. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248-49 (1973).

In evaluating Fourth Amendment challenges, "[w]e review the district court's findings of historical fact for clear error but review the legal consequences of those factual findings de novo." *Somee v. State,* 124 Nev. 434, 441, 187 P.3d 152, 157-58 (2008). Whether consent was voluntary is

"to be determined from the totality of the surrounding circumstances." *Davis v. State*, 99 Nev. 25, 27, 656 P.2d 855, 856 (1983).

Ramirez asserts that his consent was involuntary because it was the result of coercion. The district court acknowledged facts weighing in favor of coercion—the police failed to administer complete *Miranda* warnings, Ramirez invoked his right to silence and counsel, and Ramirez was in custody for over five hours. It also characterized the officer's attempt to entice Ramirez into consenting by leading him to believe he would be free to go home thereafter as "specifically disconcerting." Ultimately, however, it concluded that Ramirez's consent was voluntary because of his sophistication and familiarity with the legal system.

We are unpersuaded that this single factor outweighs the list of factors presented by Ramirez, acknowledged by the district court, and supported by the record, that weigh in favor of coercion. We therefore conclude that, based on the totality of the circumstances, Ramirez's consent was not voluntary.

Nonetheless, we conclude that this error does not warrant reversal because the inevitable discovery doctrine applies. Under this doctrine, evidence will not be suppressed based on improper police conduct if the prosecution can prove by a preponderance of the evidence that it would ultimately be discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984). Here, the police had a lawful path to Ramirez's DNA. After establishing that Ramirez was the primary suspect, the police could have arrested him without a warrant for felony burglary and obtained a DNA swab pursuant to NRS 176.09123(2)(b), which authorizes law enforcement to collect DNA from an individual arrested for a felony.

Moreover, we note that the State already had substantial evidence aside from the DNA match that linked Ramirez to the crime. This evidence was sufficient to support probable cause and, as such, the police did not *need* the DNA evidence to justify an arrest. In fact, the police arrested Ramirez on the felony burglary charges *before they even received the official DNA results.* Therefore, the State could have arrested Ramirez and subsequently obtained his DNA through lawful means, thereby making his DNA evidence admissible.

Finally, we recognize the compelling policy reasons against applying this doctrine in cases where the police had probable cause, but simply failed to get a search warrant. *United States v. Lundin*, 817 F.3d 1151, 1161-62 (9th Cir. 2016) (applying the doctrine to excuse warrantless searches merely because officers had probable cause "would completely obviate the warrant requirement of the fourth amendment" (internal quotation marks omitted)). We agree with this rationale, but emphasize that NRS 176.09123(2) does not require police to obtain a warrant before arresting a suspect on felony charges. Rather, the statute expressly authorizes law enforcement to collect DNA from a suspect "arrested for a felony *without a warrant.*" NRS 176.09123(2) (emphasis added). The police here, thus, had a clear, legal path to Ramirez's DNA that did not involve them obviating the warrant requirement of the Fourth Amendment.

Therefore, although we disagree with the district court's finding of voluntariness, we affirm the district court's decision to admit the DNA evidence because the police would have obtained Ramirez's DNA by lawful means.

*Ramirez's Batson challenge*

Ramirez challenges the State's use of a peremptory challenge to strike the only non-white juror, arguing that it was racially motivated, and



thus, unconstitutional under *Batson v. Kentucky*, 476 U.S. 79 (1986). During voir dire, the State provided its justification for striking this juror: "[H]e did not come forward that he had been arrested for a battery in 2012 and a DUI in 2009." The State then listed other jurors who were not forthright about their criminal history and explained that they too were subject to peremptory challenges.[1] The district court found that this was a valid, race-neutral reason and overruled Ramirez's *Batson* challenge.

Upon review of the record, we agree with the district court. Ramirez was on trial for battery. The juror in question was arrested for battery in 2012. This potential bias alone would justify the State's use of a peremptory challenge. *Diomampo v. State*, 124 Nev. 414, 426, 185 P.3d 1031, 1039 (2008) (identifying that the basic purpose of peremptory challenges is "to allow parties to remove potential jurors whom they suspect, but cannot prove, may exhibit a particular bias" (internal quotation marks omitted)). However, the State also struck *all* potential jurors who did not readily reveal their criminal histories, reflecting that the State was concerned with the jurors' reticence, not their race. We therefore conclude that the district court did not err in denying Ramirez's *Batson* challenge.

---

[1]Ramirez also asserts that the district court erred when it denied his request for disclosure of the State's juror criminal history information. On appeal, however, he fails to provide specific evidence demonstrating that denial of access resulted in actual prejudice, as required under *Artiga-Morales v. State*, 130 Nev. 795, 797, 335 P.3d 179, 180 (2014) (finding no reversible error where the injury "was speculative and/or prejudice was not shown"). Therefore, reversal based on the district court's denial of Ramirez's request for State-developed juror information is not warranted under *Artiga-Morales*.

*Admissibility of prior bad act evidence*

Ramirez argues that the district court improperly admitted bad act evidence at trial. "A district court's decision to admit or exclude evidence rests within its sound discretion and will not be disturbed unless it is manifestly wrong." *Libby v. State*, 115 Nev. 45, 52, 975 P.2d 833, 837 (1999). We conclude that the district court's exercise of discretion here was not manifestly wrong, and address each piece of challenged evidence in turn.

First, Ramirez challenges the district court's admission of a photograph of Ramirez wearing a bandana as unfairly prejudicial because of the association with gang affiliation. The State maintains that it used the photo to show that Ramirez, like the suspect described by the victim, wore a bandana and *not* to portray Ramirez as a gang member. We find the State's contention persuasive, especially because the State agreed to crop gang symbols out of the photo before presenting it to the jury. We therefore find no reason to disturb the district court's decision to admit the edited photograph.

Second, Ramirez challenges the State's presentation of information surrounding Tristan Conti's death, a co-conspirator who died in an unrelated police shootout the day after the burglary. Specifically, he argues it "was inflammatory and unfairly prejudicial," and that the State improperly associated Ramirez with the unrelated shootout.

Ramirez did not object to this testimony at trial; therefore, plain error review applies. *Mitchell v. State*, 124 Nev. 807, 817, 192 P.3d 721, 727 (2008). Under this standard, we can review an error if it was plain and affected the defendant's substantial rights. *Id.* "To show that an error affected substantial rights, the defendant generally must demonstrate prejudice." *Id.* at 817, 192 P.3d at 727-28.

(O) 1947A


After reviewing the State's opening argument, we conclude that the State's representation of the facts surrounding Conti's death were neither inflammatory nor unfairly prejudicial. We further note that Ramirez and the State agreed before trial that the State could present this information so long as it did so impartially. Thus, we cannot conclude from the record, nor has Ramirez demonstrated on appeal, that the State's reference to an otherwise agreed upon fact was plain error or resulted in prejudice.[2]

Next, Ramirez challenges the State's repeated use of the word "associates" and its reference to "hot prowl burglaries."[3] On appeal, he argues that the word "associates" improperly implies gang affiliation, and that the phrase "hot prowl burglaries" conflates unrelated incidents. Ramirez fails, however, to demonstrate how either reference prejudiced him at trial.[4] Absent any showing of prejudice, we defer to the district court's ruling that there were no improper references to gang affiliation at trial.

Finally, Ramirez argues that the district court improperly allowed the State to question Ramirez's girlfriend, Sonia Hurtado, about an

---

[2]Ramirez also challenges the admission of photos retrieved from Conti's phone that show Ramirez with Conti, who appears to be a gang member. After hearing from both parties outside the presence of the jury, the district court found that the photos were admissible because of their probative value in identifying Conti as one of the described perpetrators. We agree with the district court's determination, and note that Ramirez did not object to these photos when they were admitted during trial.

[3]We note that Ramirez did not consistently object, but when he did, the district court overruled his objection.

[4]In fact, at the close of trial, the district court commended the parties, recognizing that "both sides have been scrupulous in keeping references to gang involvement out of this trial."

unrelated police interrogation, over repeated objections. This testimony, he argues, "impermissibly linked Ramirez to other uncharged crimes." The State explained both at trial and on appeal that the questioning was for impeachment purposes only. Moreover, the State limited its examination of Hurtado to only those areas first discussed by Ramirez, thereby reducing the risk of prejudice. Thus, we are not persuaded that this testimony was unfairly prejudicial.

Even if it were, however, the district court gave a limiting instruction to the jury, explaining that the purpose of the testimony was to impeach Hurtado, not for the truth of the matter asserted. Under Nevada jurisprudence, jurors are presumed to follow jury instructions. *Lisle v. State*, 113 Nev. 540, 558, 937 P.2d 473, 484 (1997). To overcome this presumption, a defendant must prove "there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (citation omitted) (internal quotation marks omitted). Ramirez does not mention the district court's limiting instruction on appeal, let alone provide a reason why jurors were unable to follow it.

In sum, we find each of Ramirez's evidentiary challenges unavailing and defer to the district court's sound discretion on these rulings.

*The State's failure to provide Ramirez with evidence before trial*

Ramirez next argues that the State improperly withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he argues that the State did not provide defense counsel with the above-discussed photograph of the bandana before trial, and it withheld the above-discussed transcript of Hurtado's police interrogation. He objected to both pieces of evidence at trial, but did not do so based on *Brady*.

SUPREME COURT
OF
NEVADA



(O) 1947A

10

"*Brady* and its progeny require a prosecutor to disclose" exculpatory evidence to the defense. *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000) (explaining that the evidence must be "favorable to the defense . . . [and] material either to guilt or to punishment"). Ramirez does not explain, nor can we deduce, how a photograph of him wearing the same accessory as one of the suspects is exculpatory.

As for the transcript, Ramirez claims that it was prejudicial because it impermissibly linked him to other crimes and forced him to represent himself "in a trial within a trial without any discovery." He does not explain how something can simultaneously be both prejudicial and exculpatory. Moreover, the subject matter of that police interrogation, and thus the transcript in question, was Hurtado's *own* crimes. As such, the State was not required to send the transcript to Ramirez because it was unrelated to Ramirez's case and not exculpatory in nature.

Ramirez has thus failed to substantiate his claim that the photograph and transcript were exculpatory, and we therefore find his invocation of *Brady* unconvincing.

*Speculative testimony*

As part of his defense theory at trial, Ramirez argued that the individual acting alongside Tristan Conti was E.J. Mendez—*not* Ramirez. Ramirez framed the State's failure to investigate Mendez as a shortcoming, suggesting a lack of thoroughness on the part of the police. In response, the State defended its decision not to investigate Mendez, and called upon Detective Reed Thomas to explain why the police ruled out Mendez as a suspect. He testified that the police obtained a Facebook message sent hours after the burglary in which Conti told Mendez about what had just happened at the victim's house. The police, thus, did not think Mendez

(O) 1947A

committed the crime because there would be no need to inform Mendez about what transpired at the victim's house if Mendez were there himself.

Ramirez objected to this testimony at trial, arguing it was speculative because Detective Thomas had no personal knowledge of the subject matter. The district court overruled his objection and admitted the testimony. "A district court's decision to admit or exclude evidence rests within its sound discretion and will not be disturbed unless it is manifestly wrong." *Libby v. State*, 115 Nev. 45, 52, 975 P.2d 833, 837 (1999). It is clear from the trial transcripts that the State presented this testimony merely to explain and defend its methods of investigation, and *not* to prove its factual basis. We therefore conclude that the district court did not abuse its discretion when it overruled Ramirez's objections to this testimony.

*Ramirez's motion for a mistrial for improper inference of guilt*

Ramirez contends that the State improperly deprived him of his presumption of innocence. Specifically, when asked about Ramirez's physical appearance at trial, the State's witness stated: "I don't know what conditions he's under while at Washoe County Jail, but . . . ." Ramirez timely objected and subsequently moved for a mistrial.

It is well established that "[i]nforming the jury that a defendant is in jail raises an inference of guilt." *Haywood v. State*, 107 Nev. 285, 288, 809 P.2d 1272, 1273 (1991). While potentially prejudicial, such an inference does not always warrant a mistrial. Rather, "[t]he district court has discretion to deny a motion for a mistrial, and this court will not reverse the district court's decision absent a clear showing of abuse." *Rose v. State*, 123 Nev. 194, 206-07, 163 P.3d 408, 417 (2007) (internal quotation marks omitted).

At trial, the district court sustained Ramirez's objection to the witness's improper statement, admonished the witness, and instructed the

jury to disregard the statement. In its view, the statement did not warrant a mistrial because it was "fleeting" and did not "taint Mr. Ramirez's Sixth Amendment right to a fair trial." Ramirez does not explain why the district court's cogently reasoned ruling constitutes an abuse of discretion, and thus we decline to reverse on this basis.

*Jury instruction on the State's burden of proof*

Before jury deliberations, the district court provided the following instruction: "Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt." Ramirez argues that this instruction reduced the State's burden of proof because the word *"until"* implies that a finding of guilt is inevitable, whereas a conditional word such as *"unless"* would have been more appropriate.

Having reviewed the district court's instruction for abuse of discretion or judicial error, *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005), we perceive no such abuse or error for two reasons. First, the jury instruction here accurately tracks the language codified in NRS 175.191 ("A defendant in a criminal action is presumed to be innocent *until* the contrary is proved . . . ." (emphasis added)). Second, we have previously upheld a nearly identical jury instruction. *Blake v. State*, 121 Nev. 779, 799, 121 P.3d 567, 580 (2005) (holding that an instruction providing that "[t]he Defendant is presumed innocent *until* the contrary is proved" was not erroneous because it "plainly contemplated that guilt might not be proven" (emphasis added) (internal quotation marks omitted)). Accordingly, we conclude that the jury instruction regarding the State's burden of proof was

not erroneous.[5]

*Consideration of Ramirez's juvenile records at sentencing*

After the jury found Ramirez guilty on all seven charges, the district court sentenced Ramirez to life without the possibility of parole. Ramirez challenges his sentence, arguing that the district court improperly used Ramirez's juvenile record to enhance his sentence.

We review a district court's sentencing decision for abuse of discretion, intervening only when the defendant demonstrates "prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence." *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).

First, Ramirez fails to demonstrate that a juvenile record is either impalpable or highly suspect. On the contrary, Nevada law expressly permits a district court to consider a defendant's juvenile record at sentencing. *See Thomas v. State*, 88 Nev. 382, 385, 498 P.2d 1314, 1316 (1972). Ramirez acknowledges this precedent, yet makes no effort to distinguish the facts of this case.

Next, Ramirez fails to demonstrate any resulting prejudice. Before sentencing Ramirez, the district court listed all the factors it considered in fashioning Ramirez's sentence. Most pertinent to the district court was statutory law, which requires an increased sentence for crimes

---

[5]Ramirez acknowledges that this jury instruction has previously been upheld, but urges this court to amend it, citing *Byford v. State*, 116 Nev. 215, 236, 994 P.2d 700, 714 (2000) (proposing a new jury instruction that more clearly defines the elements of first-degree murder). We decline Ramirez's invitation because there does not appear to be any confusion over the proper meaning of the jury instruction here, nor any inconsistency in its interpretation.

committed against victims over 60 years of age. Ramirez's juvenile records have no direct bearing on this legislative mandate. Thus, Ramirez can hardly claim that consideration of his juvenile records, if any,[6] had a meaningful effect on the district court's decision to impose an increased sentence in accordance with Nevada law. We therefore conclude that the district court did not abuse its discretion at sentencing.

In light of the foregoing, we

ORDER the judgment of conviction AFFIRMED.[7]

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

cc:     Chief Judge, Second Judicial District
        Law Office of Thomas L. Qualls, Ltd.
        Attorney General/Carson City
        Washoe County District Attorney
        Washoe District Court Clerk

_____

[6]Notably absent from the list of factors the district court stated it considered is Ramirez's juvenile record.

[7]Having found just one error on the part of the district court, we conclude that Ramirez's request for reversal based on cumulative error lacks merit.