**STATE of Missouri, Respondent,**

v.

**Lemuel CARTER, Appellant.**

**Lemuel CARTER, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 62307, 64088.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 1, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 8, 1994.

Application to Transfer Denied
Jan. 24, 1995.

Lew Kollias, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mille Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Lemuel Carter brings a consolidated appeal from eight judgments of conviction and from the order denying post-conviction relief after evidentiary hearing on his Rule 29.15 motion. The judgments of conviction and order denying post-conviction relief are affirmed.

Defendant was convicted by jury verdict of second-degree felony murder, first-degree assault, two counts of first-degree robbery, and four counts of armed criminal action. He was sentenced as a prior, persistent and Class X offender to life sentences on all counts except assault in the first degree for which he received thirty years.

Defendant does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, shows that on May 30, 1991, Eddie Taylor drove his cousin, Darnell Walton, to 4226 Warne Avenue to visit Walton's girlfriend, who was babysitting at that address. At around 3:00 a.m. Walton called Taylor to come get him. Approximately forty-five minutes later, Taylor knocked on the rear door of the residence, and Walton came out onto the back porch.

As the men turned to walk down the stairs, defendant, whose nickname is Limbo, and eight or nine of his friends came around from the front of the house. All of the men had guns. Defendant and another one of the men came up on the porch, held guns on Taylor and Walton and told them to empty their pockets. Defendant took at least $300 from Walton. One of the men told Taylor and Walton to walk out into the alley. As they did one of the men fired a gun and Taylor, who had been struck by a bullet, fell face down on the street. Walton began to run and was also hit by a bullet. He managed to hop over to a garage where he was able to hide from defendant and his companions. Walton saw defendant had two guns in his hands. He saw the men gather around Taylor and fire nine or ten shots at Taylor's body.

When the officers arrived at the scene at approximately 5:00 a.m., they found Taylor lying on his stomach in a semi-conscious state. He told the officers he did not believe he was going to live and that "Limbo killed me." Taylor died at the hospital two and a half hours later.

The jury found defendant guilty as charged. Defendant timely filed a Rule 29.15 motion and a first-amended motion. An evidentiary hearing was held. The motion court denied defendant's Rule 29.15 motion. We have consolidated his direct appeal with an appeal of denial of his Rule 29.15 motion.

Defendant's first point on direct appeal is a *Batson* claim involving equal protection as it relates to the government's exercise of peremptory challenges. Defendant contends the state's explanation for striking two black venirepersons was a pretext for discrimination and was not based on legitimate, race-neutral reasons in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant argues:

THIS IS ESPECIALLY TRUE SINCE A SIMILARLY SITUATED WHITE JUROR WAS NOT STRUCK BY THE STATE, AS BOTH THE WHITE AND TWO BLACK JURORS STRUCK EVINCED THE SAME REASONS UTILIZED BY THE PROSECUTOR TO ONLY STRIKE THE BLACK JURORS, THAT REASON BEING THAT THEY DIDN'T RESPOND TO ORAL QUESTIONS DURING VOIR DIRE WHICH THEIR WRITTEN QUESTIONNAIRES INDICATED MERITED A RESPONSE.

■ Once a party has established a prima facie case under *Batson,* the other party must give race-neutral reasons for the challenged peremptory strikes. *State v. Parker,* 836 S.W.2d 930, 934 (Mo. banc 1992), *cert. denied,* — U.S. —, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). To be sufficient the explanation need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried. *Id.* If the state offers sufficient race-neutral explanations for the strikes, defendant must then show that the state's proffered reasons were merely pretextual and that the strikes were racially motivated. *Id.* at 939.

■ Trial judges are vested with considerable discretion in determining whether the defendant established purposeful discrimination. *Parker,* 836 S.W.2d at 934. Much of their determination turns upon evaluation of intangibles such as credibility and demeanor. *Id.* The trial court's determination regarding purposeful discrimination is a finding of fact that will not be overturned on appeal unless clearly erroneous. *Id.* at 939.

Defendant argues two black venirepersons, Keith Russ and Cardell Hurst, whom the state struck, were similarly situated with one white venireperson, John Weis, who sat on the jury. Defendant claims these three venirepersons were similarly situated in that they indicated on the voir dire panel information sheet, which is prepared before trial, they had been crime victims, yet none of them responded during voir dire when the state asked if anyone had been a crime victim.

■ First, we address black venireperson Russ. In addition to indicating on the voir dire panel information sheet that he had been a crime victim, Russ also indicated he had been convicted of a misdemeanor. The only affirmative answer Weis gave on the information sheet was that he had been a crime victim. Russ did not respond during

voir dire when the state asked if anyone had been convicted of any crime. The prosecutor explained he struck Russ because he did not respond to whether or not he was a crime victim *and* because he did not respond to whether or not he had been convicted of any crime. Thus, the state's explanation for striking Russ was a sufficient race-neutral explanation and was not pretextual.

■ Next we address black venireperson Hurst. Hurst was similarly situated because, like Weis, the only affirmative answer he gave on the information sheet was that he had been a crime victim. The only reason the state gave for striking Hurst was that he did not respond during voir dire to whether or not he was a crime victim. Weis did not respond either, yet he sat as a juror. Whether or not the state's explanation for striking Hurst was race-neutral and was pretextual is not material, because Hurst was rejected as an alternate juror. Thus, neither defendant's nor Hurst's Constitutional rights were violated by Hurst's exclusion from the jury. Hurst was struck from sitting as an alternate juror, and neither of the two alternate jurors ever deliberated in this case. *Batson* does not stand for the proposition there is a Constitutional right to be an alternate juror. Point denied.

■ Defendant's second point on direct appeal contends:

THE TRIAL COURT PLAINLY ERRED IN ENTERING JUDGMENT AND SENTENCE ON COUNT IV, LIFE IMPRISONMENT FOR ARMED CRIMINAL ACTION BASED ON THE UNDERLYING OFFENSE OF FIRST DEGREE ROBBERY OF EDDIE TAYLOR, BECAUSE IT VIOLATED APPELLANT'S RIGHTS TO BE FREE FROM DOUBLE JEOPARDY BY MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE IN THAT THE LEGISLATURE HAS NOT AUTHORIZED A SINGLE OFFENSE, HERE ROBBERY, TO BE THE LESSER INCLUDED OFFENSE TO SUPPORT CONVICTIONS OF TWO GREATER OFFENSES, SECOND DEGREE FELONY MURDER AND ARMED CRIMINAL ACTION.

This point was not properly preserved for review. Thus, we review only for plain error resulting in manifest injustice. Rule 30.20. We find no error.

Multiple punishments for second-degree felony murder and the underlying felony are expressly authorized by § 565.021.2 RSMo 1986. *State v. Owens*, 849 S.W.2d 581 (Mo. App.W.D.1993). Section 565.021.2 states "the punishment for second degree murder shall be in addition to the punishment for commission of a related felony...." Likewise, the armed criminal action statute, § 571.015.1 RSMo 1986, provides the punishment for that offense "shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon."

Defendant was convicted of two felonies upon Eddie Taylor, second-degree felony murder and first-degree robbery. He committed both felonies "through the use, assistance, or aid of a dangerous or deadly weapon." The statutes applicable to second-degree felony murder and armed criminal action expressly provide that the convicted defendant shall be punished separately for all of the offenses committed. The sentences imposed for the convictions on second-degree felony murder, first-degree robbery, and armed criminal action do not subject defendant to double jeopardy. Point denied.

Defendant's third point on direct appeal concerns the reasonable doubt instruction. This matter has been consistently rejected on the authority of *State v. Griffin*, 848 S.W.2d 464 (Mo. banc 1993). Point denied.

■ Defendant's fourth point on direct appeal is the trial court erred in overruling his objection to the prosecutor's statement during voir dire concerning a police officer's credibility. The portion of voir dire at issue is as follows:

[Prosecutor]: Do you all understand that principle? That you can't say, 'Police Officer Jones, I'm going to believe him because he's a police officer before he testifies,' or, 'I'm going to disbelieve him,' for that matter. You have to wait until after he testifies and then make up your mind. Now, because of a person's expertise in a field, Medical Examiner or a police officer

for that matter, *because of his expertise,* his ability to observe and remember, *you can believe him more than another person.* (our emphasis).

[Defense counsel]: Objection, Your Honor.

The court: Simply a statement—I'm—not saying—I don't understand the question as being something requiring the jury to make that. The objection will be overruled.

[Prosecutor]: After a person testifies, Ladies and Gentlemen, then you can believe he or she [more] than another person because of their expertise or how they testify.

You all understand that? Would you do that? Now, would any of you give any more consideration to a policeman because he's a policeman?

■ The trial court has discretion in controlling the nature and extent of voir dire. *State v. Hudson,* 815 S.W.2d 430, 432 (Mo. App.1991). When the trial court exercises its discretion during voir dire, its decisions will not be disturbed absent manifest abuse of that discretion and a real probability of injury to the defendant. *Id.*

■ The statement regarding expertise and police officers may have been ill-advised. However, the trial court did not err in overruling defendant's objection. The prosecutor told the venire panel that a police officer's testimony is not more credible merely because of his employment. If there is testimony in the nature of expert testimony, it may be given more weight than a lay witness' testimony, and in some instances a police officer may testify as an expert. However, in the present case, the police officers who testified did so as lay witnesses and not as experts. Neither the voir dire statement nor the police officers' testimony at trial prejudiced defendant. Point denied.

Defendant's final point on appeal concerns denial of his 29.15 motion, which alleged ineffective assistance of counsel. Defendant argues counsel was ineffective for:

FAILURE TO ADDUCE PHYSICAL EVIDENCE, PHONE RECORDS OF VINCENT ALFORD, WHICH DISPLAYED THAT HIS PHONE HAD BEEN DISCONNECTED BEFORE THE NIGHT IN ISSUE, WHICH IN TURN REBUTTED THE STATE'S KEY WITNESS, DARNELL WALTON['S], ASSERTION THAT HE MADE A TELEPHONE CALL FROM 4226 WARNE AVENUE. THIS WAS PREJUDICIAL TO APPELLANT SINCE THE CREDIBILITY OF THIS WITNESS WAS CRUCIAL TO THE STATE'S CASE, AND THIS EVIDENCE WOULD HAVE CALLED INTO QUESTION THE WITNESSES [SIC] CREDIBILITY AND ACCURACY BEFORE THE JURY.

Appellate review of denial of a 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court were clearly erroneous. Rule 29.15(j). To establish a claim for ineffective assistance of counsel, defendant must prove his counsel's performance was deficient and the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders v. State,* 738 S.W.2d 856 (Mo. banc 1987).

At the evidentiary hearing of his 29.15 motion, defendant submitted into evidence two phone records from Southwestern Bell. One of the records shows that on March 17, 1989, the phone company disconnected the phone of JoAnne Johnson, whose address is listed as 4226 Warne. The other record shows that on March 24, 1989, the phone company disconnected the phone of Felecia Hillard, whose address is also listed as 4226 Warne. Defendant did not offer any evidence that Vincent Alford had any connection with Johnson or Hillard. These phone records will not support a finding that Vincent Alford did not have a phone on the night in question, May 30, 1991, and that defense counsel was ineffective for failure to adduce these records at trial. The records would not have attacked the credibility of Walton. Point denied.

We affirm.

AHRENS, P.J., and SIMON, J., concur.