137 Nev., Advance Opinion 19

IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVEN LAWRENCE DIXON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77535

FILED

MAY 06 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of fourth-degree arson. Sixth Judicial District Court, Humboldt County; Michael Montero, Judge.

*Affirmed.*

Matthew J. Stermitz, Public Defender, Humboldt County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Michael Macdonald, District Attorney, and Maximilian Stovall, Deputy District Attorney, Humboldt County,
for Respondent.

BEFORE THE SUPREME COURT, CADISH, PICKERING, and HERNDON, JJ.

OPINION

By the Court, CADISH, J.:

The discriminatory use of a peremptory challenge during jury selection constitutes structural error requiring reversal and remand for a new trial. In this case, we consider whether the same is true where the

21-12960

discriminatory peremptory challenge was used to remove a prospective alternate juror and no alternate deliberated with the jury. We conclude there are compelling reasons to apply harmless-error review in those circumstances. Doing so here, we affirm the judgment of conviction.

## BACKGROUND

Appellant Steven Dixon went to trial on charges of fourth-degree arson and child abuse, neglect, or endangerment. During jury selection, after both the State and the defense passed the venire for cause, the district court allowed both sides to exercise their peremptory challenges outside the venire's presence.

After the jury was selected, the district court allowed each side to exercise a peremptory challenge as to the three remaining prospective alternate jurors—two of whom were female and one of whom was male. The State exercised its challenge against the male prospective alternate juror, Mr. Lara. The defense objected pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), claiming "Mr. Lara is obviously Hispanic and I certainly didn't hear him say anything that would indicate he would be anything other than fair to both sides." Without making a finding regarding a prima facie case of discrimination, the first step of a *Batson* analysis, the district court asked the State if it wished to respond. Accepting the court's invitation, the prosecutor explained his reason for using the State's peremptory challenge to remove Mr. Lara. As relevant here, the prosecutor referred to Mr. Lara's gender and the prosecutor's desire to balance the jury's makeup with a female:

> [A]t the moment the jury is heavily weighted in favor of men. I'd like to have at least a female alternate on it. The other two [prospective alternates], Ms. Graham and Ms. Delong, I think would be favorable.

I don't know much about Mr. Lara; however, I do know enough about Ms. Graham and Ms. Delong. And I'd like to increase their chances of being on the jury, obviously, it has nothing to do with race.

That explanation prompted a discussion between defense counsel and the district court during which defense counsel argued that the prosecutor's gender-based explanation also violated *Batson*:

> [DEFENSE]: Apparently it has something to do with gender. It's a slippery slope to the top.
>
> THE COURT: Well, [defense counsel], you've made a *Batson* challenge for race. [The prosecutor] has presented his explanation for that challenge. Do you wish to further respond?
>
> [DEFENSE]: Well, my response is that he's used gender, which is an impermissible basis in itself. So, you know, that's not permissible either.
>
> THE COURT: [Defense counsel], I'm confused by this. I guess I have to ask, are you claiming because of your client's race that a—
>
> [DEFENSE]: No.
>
> THE COURT: —juror should not be stricken based on their race?
>
> [DEFENSE]: Just has to do with the juror himself.
>
> THE COURT: The juror himself.
>
> [DEFENSE]: It doesn't attach to my client's race or gender. Our allegation was that it was based on the fact that he was Hispanic, and could be because there didn't seem to be any disqualifiers in the voir dire. And his response was, well, it's not race based, it's gender based. And gender based is not a—that's also a *Batson* violation. So I think Mr. Lara can stand, or you've got error.
>
> THE COURT: You can take that up, if you want. But I'm going to find there was a mutual [sic] explanation that was clear and reasonably specific,

SUPREME COURT
OF
NEVADA

(O) 1947A

and I find that there's no—there's no—the State is not striking Mr. Lara based on his race.

[DEFENSE]: Just his gender.

The district court excused Mr. Lara, and the matter proceeded to trial. The alternate juror did not participate in the jury's deliberations, and Dixon was ultimately convicted of fourth-degree arson. This appeal followed.

## DISCUSSION

The Equal Protection Clause prohibits the use of peremptory challenges to discriminate based on race or gender.[1] *Batson*, 476 U.S. at 89 (race); *J.E.B.*, 511 U.S. at 129 (gender). When a party objects to the alleged use of a race- or gender-based peremptory challenge, a district court must resolve the objection using a three-step process. *See Batson*, 476 U.S. at 93-98, 100; *see also Libby v. State (Libby II)*, 115 Nev. 45, 50, 975 P.2d 833, 836 (1999) (applying the *Batson* process to a claim of gender-based discrimination). The process consists of (1) the opponent of the peremptory challenge making a prima facie showing of discrimination; (2) if the prima facie showing is made, the proponent presenting a nondiscriminatory explanation for the peremptory challenge; and (3) the district court determining whether the opponent has proven purposeful discrimination. *Libby II*, 115 Nev. at 50, 975 P.2d at 836. At the final step, "[t]he district court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available and consider all relevant

---

[1]The Equal Protection Clause protects not only "individual defendants from discrimination in the selection of jurors," *Powers v. Ohio*, 499 U.S. 400, 406 (1991), but also individual jurors who "possess the right not to be excluded . . . on account of race" or gender. *Id.* at 409; *J.E.B. v. Alabama*, 511 U.S. 127, 140-41 (1994).

circumstances before ruling on a *Batson* objection and dismissing the challenged juror." *Conner v. State*, 130 Nev. 457, 465, 327 P.3d 503, 509 (2014) (internal quotation marks omitted). A *Batson* objection should be sustained where "it is more likely than not that the challenge was improperly motivated." *Williams v. State*, 134 Nev. 687, 692, 429 P.3d 301, 307 (2018) (internal quotation marks omitted). We give great deference to a district court's findings regarding a *Batson* objection "and will only reverse if the district court clearly erred." *Id.* at 688, 429 P.3d at 305.

When Dixon objected to the State's use of a peremptory challenge to remove Mr. Lara, the district court asked the State if it wished to respond, without first determining whether Dixon had met his burden at *Batson*'s first step to make a prima facie showing of discrimination. The State responded with its explanation for the peremptory challenge. Therefore, step 1 is moot. *See id.* at 690-91, 429 P.3d at 306-07 ("Where, as here, the State provides a race-neutral reason for the exclusion of a veniremember before a determination at step one, the step-one analysis becomes moot and we move to step two.").

At step 2—a neutral explanation for the strike—the State said that it wanted a female alternate.[2] The State's explanation was clearly

---

[2]We decline the State's invitation to adopt the dual-motivation analysis, as the State has not shown that it presented a permissible, neutral explanation for the strike. As the United States Supreme Court has admonished, "the proponent of a strike must give a clear and reasonably specific explanation of [the] legitimate reasons for exercising the challenges." *Purkett v. Elem*, 514 U.S. 765, 768-69 (1995) (internal citations and quotation marks omitted); *see also State v. Giles*, 754 S.E.2d 261, 265 (S.C. 2014) ("The proponent of the challenge must provide an objectively discernible basis for the challenge that permits the opponent of the

gender-based and thus impermissible. And although defense counsel initially objected to the peremptory challenge as being motivated by race, that did not give the State cover to instead discriminate based on gender. Once the State offered a clearly discriminatory reason for exercising the peremptory challenge, the district court had no choice but to find that the State had not met its burden at step 2. The district court thus should have sustained the *Batson* objection.

"Discriminatory jury selection in violation of *Batson* generally constitutes 'structural' error that mandates reversal." *Diomampo v. State*, 124 Nev. 414, 423, 185 P.3d 1031, 1037 (2008). However, the State argues we should apply harmless-error review because Mr. Lara was a prospective alternate juror and no alternate deliberated on the jury. Dixon contends that structural error should still apply as with other *Batson* violations

---

challenge and the trial court to evaluate it."). The State's alternate reason for the strike—that "it did not have sufficient information to know whether Mr. Lara would make a good juror" but that it "thought both remaining female [prospective alternate] jurors would make good jurors"—does not satisfy those requirements. And without the transcript of the voir dire, we cannot further consider the State's explanation because it is unclear what information was disclosed by the three prospective alternates or what questions, if any, the State asked Mr. Lara. *See Ex parte Branch*, 526 So. 2d 609, 624 (Ala. 1987) (listing evidence that can show the prosecutor's explanation was pretextual, including "a lack of questioning to the challenged juror, or a lack of meaningful questions" and "[d]isparate examination of members of the venire"); *Slappy v. State*, 503 So. 2d 350, 355 (Fla. Dist. Ct. App. 1987) (recognizing the prosecutor's disparate examination of a struck juror or the prosecutor's failure to examine, or a perfunctory examination of, a struck juror to be factors "weigh[ing] heavily against the legitimacy of any race-neutral explanation").

because the harm from a discriminatorily chosen jury extends beyond the defendant and the excused individual to affect the entire community and the integrity of the courts. *See Conner v. State*, 130 Nev. 457, 462, 327 P.3d 503, 507 (2014) (recognizing discriminatory jury selection affects more than the accused and the excused juror but also "invites cynicism respecting the jury's neutrality, and undermines public confidence in adjudication" (internal quotation marks omitted)).

"The Supreme Court has not said whether or not *Batson* requires automatic reversal when a prosecutor wrongly excludes an alternate juror, but no alternate joins deliberations." *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001). Other courts are split on the issue. Those courts that have rejected harmless-error review in that circumstance have done so for reasons similar to our reasoning in *Conner*—that the potential harm caused by discriminatory jury selection goes beyond the defendant and the prospective alternate juror. *See, e.g., United States v. Harris*, 192 F.3d 580, 587-88 (6th Cir. 1999) (finding harmless-error review inappropriate because "the harm inherent in a discriminatorily chosen jury inures not only to the defendant, but also to the jurors not selected because of their race, and to the integrity of the judicial system as a whole" and "[b]ecause the process of jury selection—even the selection of alternate jurors—is one that affects the entire conduct of the trial"). However, a number of courts have applied harmless-error review where the challenged veniremember was a prospective alternate, concluding that there is no possible prejudice to the defendant where the alternate does not deliberate.

*See, e.g., United States v. Lane*, 866 F.2d 103, 106 n.3 (4th Cir. 1989) (claiming in a footnote that if the case had involved an alternate and no alternate deliberated, then the defendant "would not have been prejudiced by the peremptory challenge to [the excused juror], regardless of the stated reason"); *Nevius v. Sumner*, 852 F.2d 463, 468 (9th Cir. 1988) ("No alternate jurors were called upon to serve in [defendant's] case, however; the challenge was harmless."); *Roberts v. Singletary*, 794 F. Supp. 1106, 1125 (S.D. Fla. 1992) ("Since none of the [alternates] were called upon to replace any of the twelve jurors actually seated, there can be no possible prejudice to the defendant for failing to have [the excused juror] as a second alternate."); *People v. Turner*, 878 P.2d 521, 539 (Cal. 1994) ("[N]o alternate jurors were ever substituted in, and hence it is unnecessary to consider whether any *Wheeler*[/*Batson*] violation occurred in their selection. Moreover, any *Batson* violation could not possibly have prejudiced the defendant."), *abrogated on other grounds by People v. Griffin*, 93 P.3d 344 (Cal. 2004); *State v. Carter*, 889 S.W.2d 106, 109 (Mo. Ct. App. 1994) (stating "*Batson* does not stand for the proposition there is a Constitutional right to be an alternate juror" and concluding the defendant's and the alternate's rights were not violated by the alternate's exclusion); *State v. Ford*, 513 S.E.2d 385, 387 (S.C. Ct. App. 1999) ("Any *Batson* violation in regards to a possible alternate juror is harmless where an alternate was not needed for deliberations.").

We are persuaded that harmless-error review should be applied in the circumstances presented here. The United States Supreme Court has been clear that "if the defendant had counsel and was tried by an

impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579 (1986). The rare errors that are deemed "structural" and therefore require automatic reversal typically "affect[ ] the framework within which the trial proceeds" and "infect the entire trial process," rendering it "fundamentally unfair," *Neder v. United States*, 527 U.S. 1, 8 (1999) (internal quotation marks omitted), or have effects that "are too hard to measure," *McCoy v. Louisiana*, 584 U.S. ___, ___, 138 S. Ct. 1500, 1512 (2018). As relevant here, we have held that "[d]iscriminatory jury selection in violation of *Batson* constitutes structural error, or error that affects the framework of a trial . . . [, and] such error is intrinsically harmful," thus requiring automatic reversal. *Brass v. State*, 128 Nev. 748, 752, 291 P.3d 145, 148 (2012). But where the *Batson* violation involves a prospective alternate and no alternate participates in deliberations, the discrimination did not directly impact the jury's makeup and the defendant was not tried by a jury whose members were selected pursuant to discriminatory criteria. The effects of the error are thus not too hard to measure—we can be assured that a *Batson* violation involving a prospective alternate had no effect on the deliberations as to a defendant's guilt where no alternate participated in deliberations.[3] *See People v. Rodriguez*, 58 Cal. Rptr. 2d 108, 121 (Ct. App. 1996) ("With the benefit of

---

[3]Indeed, we have applied harmless-error review where a defendant was denied the opportunity to individually voir dire an alternate juror about exposure to publicity during trial because the alternate was "not involved in the ultimate decision of the case." *Libby v. State*, 109 Nev. 905, 913-14, 859 P.2d 1050, 1055-56 (1993), *vacated on other grounds by Libby v. Nevada*, 516 U.S. 1037 (1996).

hindsight, we can determine whether the defendant suffered any harm as a result of the [district] court's error only because no alternate juror was ever called upon to decide the defendant's guilt or innocence."). As a result, the fundamentals for harmless-error review are present—"[h]armless-error analysis . . . presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury." *Rose*, 478 U.S. at 578.

There is no constitutional right to alternate jurors, nor is there a right to be an alternate juror. *See Carter*, 889 S.W.2d at 109. And while we are cognizant that discriminatory selection of an alternate juror does not reflect well on the judicial system, we also must consider the "human, social, and economic costs of reversal and retrial." *Williams*, 134 Nev. at 696, 429 P.3d at 310. Thus, it is only under the specific facts of this case—where a discriminatory peremptory challenge was made against a prospective alternate juror and no alternate was called upon to deliberate—that we believe the practicality of harmless-error review is warranted: "The practical objective of tests of harmless error is to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error. The grand objective is to conserve the vitality of the rules and procedures designed to assure a fair trial." *Rodriguez*, 58 Cal. Rptr. 2d at 122 (internal quotation marks omitted).

Although the district court clearly erred in rejecting Dixon's *Batson* objection to the State's use of a peremptory challenge to remove a

SUPREME COURT
OF
NEVADA

(O) 1947A

10

prospective alternate juror based on gender, the error had no effect on the outcome of Dixon's trial and was therefore harmless because no alternate deliberated with the jury. We affirm the judgment of conviction.

_____ ,J.
Cadish

We concur:

_____ , J.
Pickering

_____ , J.
Herndon