NOT DESIGNATED FOR PUBLICATION

No. 126,826

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC MIGUEL CAMACHO-RODRIGUEZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Oral argument held February 10, 2026. Opinion filed June 5, 2026. Affirmed.

*Carol L. Schmidt* and *Hope E. Faflick Reynolds*, of Capital Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before PICKERING, P.J., CLINE, J., and CAREY L. HIPP, District Judge, assigned.


PER CURIAM: Following a jury trial, Eric Miguel Camacho-Rodriguez appeals his convictions and sentence for four counts of aggravated criminal sodomy and one count of aggravated indecent liberties. He raises constitutional speedy trial and jury selection claims and challenges the district court's imposition of two consecutive life sentences as an abuse of discretion. Finding no reversible error, we affirm.

1

Eric Miguel Camacho-Rodriguez began dating R.G. in 2013. He later moved in with her and her daughter (D.G.), who was born in 2010.

In March 2020, school officials learned about two entries that D.G. wrote in her diary which indicated that she had been sexually abused by two family members. The entries identified an uncle and D.G.'s "Dad" as the perpetrators.

D.G. participated in an interview with a detective and a Department for Children and Families worker at the at the Child Advocacy Center. She identified Camacho-Rodriguez, who she considered her dad, as the person who sexually abused her. She described some of the abuse as including several instances of oral sodomy and one instance of anal sodomy.

A forensic nurse examined D.G. after the interview. During this examination, D.G. described a recent instance of abuse in which Camacho-Rodriguez forced "his privates in her butt." The forensic scientist took several swabs, including vaginal and anal swabs, and sent them to law enforcement. A DNA analyst tested the swabs and found semen on the vaginal and anal swabs. The analyst concluded that Camacho-Rodriguez could not be excluded as a minor contributor of the DNA profile obtained from the sperm cell fraction of the vaginal swab and a major contributor of the DNA profile from the sperm cell fraction of the anal swab.

Law enforcement interviewed Camacho-Rodriguez. He denied that any inappropriate contact occurred. However, around 45 minutes into the interview, he admitted that he once asked D.G. to touch his penis while he was in the shower but that nothing else happened.

*Pretrial Proceedings*

Police arrested Camacho-Rodriguez on March 3, 2020. Three days later, the State charged him with four counts of aggravated criminal sodomy and one count of aggravated indecent liberties with a child. The complaint alleged that these crimes occurred between August 2018 and February 2020.

The district court initially set a preliminary hearing date for March 19, 2020. The hearing was continued several times at defense counsel's request and for reasons related to the COVID-19 pandemic. Around nine months into the proceedings, the district court held an evidentiary preliminary hearing. Arraignment was held on April 12, 2021, and a control setting of July 19, 2021, was established for trial. The district court subsequently continued the trial date to October 25, 2021.

On September 27, 2021, Camacho-Rodriguez filed a pro se motion for new counsel. The district court granted the motion and informed Camacho-Rodriguez that this would cause additional delays in the proceedings. The district court later appointed replacement counsel.

In December 2021, Camacho-Rodriguez filed a pro se motion to dismiss for failure to provide a speedy trial. Defense counsel later filed a similar motion to dismiss on constitutional speedy trial grounds in July 2022. The district court denied these motions, finding the reasons for the delay were "defendant's own actions, . . . defense counsel's need for more time to prepare for trial, and . . . the COVID-19 pandemic and its consequences."

*Trial and Verdict*

Defense counsel unsuccessfully moved to dismiss again at trial, arguing Camacho-Rodriguez' constitutional right to a speedy trial had been violated under *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). In denying this motion, the district court noted that Camacho-Rodriguez and defense counsel had requested or consented to several continuances leading to trial. The district court also found that because our Supreme Court issued a "moratorium for statutory speedy trial" deadlines, it did not reasonably follow that Camacho-Rodriguez' "constitutional speedy trial [claim] justifie[d] dismissal." The district court also specifically found that "Barker v. Wingo issues [did] not apply in this case," and Camacho-Rodriguez' speedy trial rights had not been violated "pursuant to those issues."

The State called multiple witnesses at trial, including D.G. During her testimony, D.G. stated several times that she could not remember certain events. During the State's direct examination, the district court paused the proceedings to allow her to watch her Child Advocacy Center interview with counsel in private to refresh her memory.

Camacho-Rodriguez did not testify. He also did not call any witness in his defense.

During deliberations, the jury submitted two questions asking, "Can we get a copy of [D.G.'s] interview transcript and of her court testimony?" and, "If we cannot agree on 1/5 charges what happens?" After deliberating further, the jury convicted Camacho-Rodriguez of all five counts of aggravated sodomy and aggravated indecent liberties with a child.

4

*Posttrial Motions and Sentencing*

Camacho-Rodriguez filed a posttrial motion for a judgment of acquittal, reasserting that he was not given a speedy trial and challenging his convictions as insufficiently supported. At sentencing, he also moved for a durational departure to the applicable sentencing guidelines grid block. He also asked the district court not to impose consecutive sentences.

The district court denied these motions and sentenced Camacho-Rodriguez to life sentences with a mandatory minimum 25-year term of imprisonment for each count. The district court ordered the sentences for counts one and four to run consecutive to one another and the remaining sentences to run concurrent with count one.

Camacho-Rodriguez timely appeals.

ANALYSIS

I. *Did the district court err in denying Camacho-Rodriguez' motion to dismiss for failure to provide a constitutionally speedy trial?*

In his first appellate claim, Camacho-Rodriguez challenges the district court's denial of his motion to dismiss for failure to provide a speedy trial. He argues the three-year delay between his arrest and trial was presumptively prejudicial and resulted in a violation of his constitutional right to a speedy trial. He also argues that if not presumptively prejudicial, the delay was otherwise prejudicial because it resulted in "memory challenges" for the State's main witness.

*Standard of Review and Basic Legal Principles*

This court reviews the district court's factual findings supporting its decision regarding a defendant's constitutional speedy trial right for substantial competent evidence. The ultimate legal conclusion drawn from those facts is reviewed de novo. *State v. Owens*, 310 Kan. 865, 868, 451 P.3d 467 (2019).

The legal framework for considering a speedy trial claim is well settled. The Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights both provide a right to speedy trial. *State v. Smith*, 320 Kan. 62, 70, 563 P.3d 697 (2025); *State v. Otero*, 210 Kan. 530, 531, 502 P.2d 763 (1972). "It is . . . impossible to determine with precision when the right [to a speedy trial] has been denied." *Barker*, 407 U.S. at 521. Kansas courts have thus followed the four-factor balancing test adopted by the United States Supreme Court in *Barker*. We thus consider: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of the speedy trial right; and (4) prejudice to the defendant. *State v. Ford*, 316 Kan. 558, 561, 519 P.3d 456 (2022); *State v. Hayden*, 281 Kan. 112, 127, 130 P.3d 24 (2006) (observing this court adopted *Barker* factors in *Otero*). None of these factors alone necessarily or sufficiently establishes that a violation occurred. Instead, the factors must be considered together and alongside any other relevant circumstances. *Smith*, 320 Kan. at 70; *Owens*, 310 Kan. at 869.

*Preservation*

The parties both address each of the four *Barker* factors in support of their respective positions on this issue. Preliminarily though, Camacho-Rodriguez addresses preservation. He also argues that the district court did not apply the *Barker* factors and instead improperly held that they do not apply here because our Supreme Court issued an administrative order that suspended statutory deadlines for all jury trials. See Kan. S. Ct.

Admin. Order 2020-PR-32 (suspending statutory speedy trial deadlines and ordering district courts engage in only emergency operations); see also Kan. S. Ct. Admin. Order 2020-PR-99 (ordering that jury trial proceedings could resume "regardless of whether there is a constitutional speedy trial issue").

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Constitutional grounds for reversal asserted for the first time on appeal are likewise generally precluded from appellate review. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022).

Camacho-Rodriguez undoubtedly raised his constitutional speedy trial challenge in the district court before raising it on appeal. He filed a pro se motion and a motion prepared by his attorney before trial, arguing violations of his constitutional speedy trial rights. He raised this argument again at trial and in a posttrial motion to dismiss. In his trial and pretrial arguments, he also specifically relied on *Barker* and outlined *Barker*'s four-factor test in the written motion.

However, as Camacho-Rodriguez correctly notes, the district court made very few findings related to the *Barker* factors. Of the four *Barker* factors, the district court addressed only one—the reason for the delay. On that factor, the district court simply found Camacho-Rodriguez, defense counsel, and COVID-19 responsible: "[T]he record reflects that most of the delays were due to (i) defendant's own actions, (ii) defense counsel's need for more time to prepare for trial, and (iv) [*sic*] the Covid-19 pandemic and its consequences." The only other discussion that the district court provided on this factor was at trial. There, the district court similarly faulted Camacho-Rodriguez and COVID-19 related issues for the delays. And as Camacho-Rodriguez points out, the district court also incorrectly found *Barker* inapplicable based on our Supreme Court's administrative orders.

The district court therefore did not discuss the remaining *Barker* factors, including (1) the length of the delay, including whether it was presumptively prejudicial; (2) Camacho-Rodriguez' assertion of his right to a speedy trial; or (3) the prejudice Camacho-Rodriguez faced due to the delays. The district court also did not assign specific portions of the delays to different parties and instead broadly attributed the delays to Camacho-Rodriguez and COVID-19.

The *Barker* factors are case specific and inherently factual, so the lack of findings significantly limits this court's ability to review the decision. Also, appellate courts do not make factual findings and instead review the district court's findings. "[T]hus, where there are no factual findings related to any test of constitutionality[,] an appellate court is not in a position to decide whether the defendant's constitutional protections have been compromised." *State v. Anderson*, No. 126,770, 2025 WL 290004, at *4 (Kan. App. 2025) (unpublished opinion) (citing *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 [2009]), *aff'd* 321 Kan. 594, 582 P.3d 524 (2026).

Kansas Supreme Court Rule 165 (2026 Kan. S. Ct. R. at 232) primarily places the burden of ensuring adequate factual findings and conclusions on the court: "In a contested matter submitted to the court without a jury . . . the court must state its findings of fact and conclusions of law in compliance with K.S.A. 60-252." See also *Anderson*, 2025 WL 290004, at *4 (listing appellate decision characterizing this duty as mandatory). However, our Supreme Court has also held that defendants must generally object to inadequate findings in the district court before an issue that depends on the missing findings may be appealed. See *State v. Espinoza*, 311 Kan. 435, 436-37, 426 P.3d 159 (2020); *Blair Construction, Inc. v. McBeth*, 273 Kan. 679, 688, 44 P.3d 1244 (2002); *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 378, 855 P.2d 929 (1993).

As such, the defendant generally bears a responsibility to object to inadequate findings of fact and conclusions in the district court before appealing an issue like the one

raised here. See *State v. Seward*, 289 Kan. 715, 721, 217 P.3d 443 (2009) (clarifying that defendants wanting to appeal a constitutional challenge must ensure adequate findings of fact and conclusions of law are made in the district court to support the appellate argument), *disapproved of on other grounds by State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015).

When no objection is made to a district court's findings of fact or conclusions of law on the basis of inadequacy, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Sanders*, 310 Kan. 279, 290, 445 P.3d 1144 (2019). Also see *Seward*, 289 Kan. at 721 (indicating that remand should not be commonly granted to defendants who fail to obtain necessary findings and conclusions to properly appeal their claims).

The panel in *Anderson* declined to remand a defendant's constitutional, search and seizure claim based on inadequate fact-findings. The panel made this decision based on a relatively in-depth analysis of the competing principles for remanding versus dismissing these types of claims. In ultimately electing to dismiss the defendant's appellate claim, the *Anderson* panel seemingly recognized that inadequate findings should be treated as an error caused by a defendant's shirking of a responsibility imposed by our Supreme Court. And such errors should rarely be granted the remedy of remanding to the district court, especially where the defendant's argument in the district court did little to help direct the court's attention to the findings and conclusions that should be made. See 2025 WL 290004, at *4-5. "Such a measure would essentially enable [a defendant] to enjoy a second bite at the apple." 2025 WL 290004, at *5.

In this case, Camacho-Rodriguez argues that the district court failed to apply the appropriate test, *Barker*'s four-factor test, and thus did not make the necessary considerations to decide his constitutional speedy trial claim. In arguing this, he tacitly concedes that the lack of findings precludes this court's review. Although he presented

9

the argument to the district court several times, he did not object to the inadequacy of the findings. He also provided a fairly bare-bones analysis for his argument in the district court, citing *Barker* and summarily demanding that relief should be granted. And now he asks the panel to independently address each factor to reverse the district court's ruling. This request runs afoul of basic appellate review standards and other basic legal principles. Lacking adequate factual findings and legal conclusions, this issue is affirmed.

II.  *Did the district court violate Camacho-Rodriguez' constitutional right to an impartial jury by granting the State's motion to strike a potential juror in violation of* Batson?

After voir dire, Camacho-Rodriguez unsuccessfully objected to the State's use of peremptory strikes to remove E.R., a Hispanic man, from serving as an alternate juror. He now argues that the district court applied an incorrect legal standard in overruling his objection and ultimately erred in finding the State's reasons for striking the prospective alternate were race-neutral.

Our Supreme Court outlined the applicable standard of review and three-step test for reviewing *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), challenges in *State v. Peters*, 319 Kan. 492, 555 P.3d 1134 (2024):

> "An exercise of a peremptory strike from the jury panel solely based on the juror's race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *State v. Dupree*, 304 Kan. 43, 57, 371 P.3d 862 (2016). Such exercise of the peremptory strike violates a defendant's right to a jury of his or her peers and to 'purposefully exclude [minority] persons from juries undermine[s] public confidence in the fairness of our system of justice.' *Batson*, 476 U.S. at 87. A challenge to the State's use of a peremptory challenge during jury selection under *Batson* is analyzed in three distinct steps, with different standards of review for each step. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 121, 431 P.3d 850 (2018).

"The first step requires the defendant to make a prima facie showing that the prosecutor's challenge was made on the basis of race. Appellate courts exercise unlimited review over the district court's rulings on this showing. 309 Kan. at 121.

"If a prima facie showing is made, the second step requires the State to produce a neutral, nondiscriminatory explanation for exercising the peremptory strike. The race-neutral explanation must be facially valid even if it is not necessarily plausible or persuasive. 309 Kan. at 123. Although the burden of production switches, the burden of persuasion never shifts from the opponent of the strike, and the reviewing court must give significant deference to the district court's factual rulings. 309 Kan. at 124. 'On appeal, "we review de novo whether the striking party's proffered explanation is race neutral" for purposes of satisfying the second step of the *Batson* inquiry.' *United States v. Nelson*, 450 F.3d 1201, 1207 (10th Cir. 2006).

"Once the second step is met, the burden shifts and the defendant must show the State's nondiscriminatory explanation is pretextual. At this third step, the district court assesses the plausibility of the State's race-neutral reason in light of all the evidence. *Gonzalez-Sandoval*, 309 Kan. at 126. Because plausibility is a factual matter that hinges on credibility determinations, a reviewing court should give those findings great deference. 309 Kan. at 126. Appellate courts review the decision for abuse of discretion. 309 Kan. 113, Syl. ¶ 7. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Levy*, 313 Kan. at 237." *Peters*, 319 Kan. at 506-07.

*Additional Facts*

At the conclusion of voir dire, the district court noted that they would take care of the initial strikes of jurors and then the alternate jurors would be taken care of. The court then asked the parties to make their peremptory strikes. They each exercised 12 strikes. The court then stated that it planned to have the parties choose two alternates out of a pool of six, allowing each side two peremptory strikes. The State used one to strike E.R., and Camacho-Rodriguez objected, challenging the strike as a *Batson* violation.

11

The district court asked the State for its reason for the strike. In response, the prosecutor argued that Camacho-Rodriguez had not shown a pattern of discrimination in the State's strikes and noted that Camacho-Rodriguez had also struck at least one Hispanic prospective juror. The State continued:

> "But, secondly, the State would note that [E.R.] identified a couple of somewhat concerning responses to questions. He also had a certain—and I suppose this is an intangible—but I don't know if it was a chip on his shoulder, or displayed a hesitancy to be here, or there was something intangible about his demeanor in the courtroom, where he did answer questions. Some of his answers were concerning. But, ultimately, he just seemed to indicate, based on body language or demeanor, that he just didn't really have quite an interest in participating in the proceedings.
>
> "Also, he is an alternate slot, so the likelihood of actually utilizing him in the process is unlikely. So the State's position is that we have some race-neutral reasons in order to strike [E.R.]."

Defense counsel replied that the defense had struck one Hispanic prospective juror, while the State had already struck two other Hispanic persons.

The district court did not make a ruling on the objection under *Batson*. The court instead found the issue was not ripe and would only become ripe if "we get to the point where we're going to call one of our alternates."

1.  *Prima Facie Showing*

The State does not dispute that Camacho-Rodriguez made the requisite prima facie showing under the first prong of this test. Moreover, "[t]he caselaw is clear that the preliminary issue of whether the defendant made a prima facie showing under *Batson* becomes moot once the district court proceeds to the next steps." *Peters*, 319 Kan. at 509.

12

The district court asked the State to provide its reasons for striking E.R., and the State offered a response. So this part of the *Batson* analysis is moot. See *State v. Gonzalez*, 311 Kan. 281, 302-03, 460 P.3d 348 (2020).

2.      *Articulated Race-Neutral Reason for Exercising the Peremptory Strike*

The second step of the *Batson* analysis requires a race-neutral reason for the strike. This "does not demand a prosecutor's explanation that is persuasive, or even plausible, but merely facially valid. Further, unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *State v. Pham*, 281 Kan. 1227, 1237, 136 P.3d 919 (2006).

The prosecutor provided two reasons here: (1) E.R.'s "concerning responses" to questions during voir dire; and (2) E.R.'s body language and other nonverbal indications suggesting a reluctance to participate in the proceedings. Camacho-Rodriguez criticizes these "purportedly" race-neutral reasons as "flimsy" but concedes that they are sufficient for purposes of this step in the analysis.

3.      *Pretext*

After the State offered race-neutral reasons for the strike, the burden shifted to Camacho-Rodriguez to show the prosecutor's reasons were pretext to conceal a discriminatory intent. *Gonzalez-Sandoval*, 309 Kan. at 126. To determine this, the district court must ""assess the plausibility of that reason in light of all evidence with a bearing on it.""" *Peters*, 319 Kan. at 510. Again, plausibility is a factual matter that often hinges on credibility determinations. Therefore, a reviewing court should give those findings great deference. 319 Kan. at 510-11; see *Flowers v. Mississippi*, 588 U.S. 284, 303, 139 S. Ct. 2228, 204 L. Ed. 2d 638 (2019) ("An appeals court looks at the same factors as the trial judge, but is necessarily doing so on a paper record," so review of factual

13

determinations in a *Batson* hearing is "'highly deferential.'"); see also *State v. McCullough*, 293 Kan. 970, 992, 270 P.3d 1142 (2012) ("This step hinges on credibility determinations because usually there is limited evidence on the issue, and the best evidence is often the demeanor of the party exercising the challenge.").

The district court did not make this assessment and instead dismissed the issue as not ripe. The district court's procedure for addressing the *Batson* issue failed to address the third step of *Batson* and was thus legally flawed.

The parties generally agree that the district court should have addressed this final prong of the *Batson* analysis. However, the State notes that Camacho-Rodriguez provided a response to the reasons articulated before the district court dismissed the issue. Specifically, Camacho-Rodriguez argued that the State had already struck two other Hispanic prospective jurors. Based on this, the State argues that Camacho-Rodriguez clearly had an opportunity to unveil the prosecutor's true intent. The State also tacitly suggests that although the district court did not follow the three prong *Batson* analysis completely, Camacho-Rodriguez effectively received the protections that the analysis is intended to provide. Additionally, citing *State v. Brown*, 314 Kan. 292, 302, 498 P.3d 167 (2021), the State argues that Camacho-Rodriguez was responsible for creating the record of relevant facts to show pretext but ultimately failed to do so.

The State's reliance on *Brown* is somewhat misplaced. In that case, our Supreme Court described the relevant considerations that a district court may but is not necessarily required to make in conducting this analysis:

> "[A] district court may consider numerous factors, including statistical evidence, side-by-side comparisons of jurors, and the prosecutor's purported misrepresentation of the record. See *Flowers*, 588 U.S. at 301-02. But it is not the district court's duty to investigate these factors sua sponte. See *State v. Campbell*, 268 Kan. 529, 535, 997 P.2d

14

726 (2000) . . . . Rather, the 'defendant has the burden to create the record of relevant facts and to prove his or her case to the trial court.' [*State v. Trotter*, 280 Kan. 800, 818-19, 127 P.3d 972 (2006)]." *Brown*, 314 Kan. at 303.

Contrary to the State's argument, *Brown* did not hold that a defendant must ensure the district court addresses this prong of the *Batson* analysis. *Brown* simply confirms that a defendant is responsible for providing the district court with a basis for sustaining their *Batson* objection.

That said, Camacho-Rodriguez did have a responsibility to ensure the district court made the findings necessary to argue his claim here. See *Seward*, 289 Kan. at 721. However, unlike Camacho-Rodriguez' first appellate claim, this issue can be decided based almost entirely on the law. So, the missing factual findings regarding the plausibility of the prosecutor's reasons for striking E.R. do not necessarily preclude this court from resolving rather than dismissing this issue.

This court is unable to determine from the record whether Camacho-Rodriguez sufficiently proved pretext. Such a ruling would require additional fact-findings regarding Camacho-Rodriguez' proof of purposeful discrimination, which this court cannot make. See *Thomas*, 288 Kan. at 161. Also, although Camacho-Rodriguez provided an immediate response to the prosecutor's articulated reasons, it is unclear from the record whether he intended to end his response where he did. In other words, it is not clear from the transcript whether the district court gave him a proper opportunity to address the prosecutor's remarks, as the State argues on appeal. In addition, this prong of the *Batson* analysis often hinges on credibility determinations, which must be made by the trial court. See *McCullough*, 293 Kan. at 992 (finding "the best evidence" for assessing discriminatory intent "is often the demeanor of the party exercising the challenge" and tends to hinge on credibility determinations). As such, the parties' arguments asking this court to decide the merits of this issue must be denied.

15

4.      *Prejudice, Harmless Error*

Our appellate courts have never specifically addressed whether *Batson* applies equally to potential alternates and potential jurors. Cf. *State v. Angilda*, No. 106,226, 2013 WL 1234188, \*5-6 (Kan. App. 2013) (unpublished opinion) (reviewing *Batson* claim challenging the exclusion of a potential alternate juror under the same standard and principles without addressing this issue). Regardless, Kansas precedent shows that a district court errs as a matter of law when it fails to follow the appropriate three-step procedure for addressing *Batson* challenges. And at least in the context of *Batson* challenges related to potential jurors, the remedy for this type of procedural error is to remand to the district court for a proper *Batson* hearing. See *State v. Bolton*, 271 Kan. 538, 544-45, 23 P.3d 824 (2001) (finding error in failure to require State to articulate a race-neutral reason for its peremptory strike and remanding to district court to conduct proper, non-evidentiary *Batson* hearing).

The United States Supreme Court has recognized "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). "The right to an impartial adjudicator, be it judge or jury, is such a right." *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S. Ct. 2045, 95 L. Ed. 2d 622 (1987). The Court in *Batson* held that "[i]f the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed." 476 U.S. at 100.

This court has previously acknowledged that a *Batson* violation "effectively amounts to a structural error, requiring the reversal of any conviction without regard to the strength of the evidence supporting the guilty verdict." *State v. Jenkins*, No. 117,026, 2018 WL 2375788, at \*6 (Kan. App. 2018) (unpublished opinion).

16

Other jurisdictions are divided on whether *Batson* requires automatic reversal when a prosecutor wrongly excludes an alternate juror but no alternate joins deliberations. See *Dixon v. State*, 137 Nev. 217, 221, 485 P.3d 1254 (2021) (listing cases addressing this issue). Some of those courts have firmly held that even under these circumstances, a *Batson* error can never be deemed harmless. See, e.g., *United States v. Harris*, 192 F.3d 580, 587-88 (1999) (rejecting the government's "hindsight" harmless error argument). Conversely, several other courts have applied a harmless error analysis to facts like these. See, e.g., *Nevius v. Sumner*, 852 F.2d 463, 468 (9th Cir. 1988) ("No alternate jurors were called upon to serve in [defendant's] case, however; the challenge was harmless."); *State v. Carter*, 889 S.W.2d 106, 109 (Mo. Ct. App. 1994) ("*Batson* does not stand for the proposition there is a Constitutional right to be an alternate juror" and concluding the defendant's and the alternate's rights were not violated by the alternate's exclusion); *State v. Ford*, 334 S.C. 444, 449, 513 S.E.2d 385 (Ct. App. 1999) ("Any *Batson* violation in regards to a possible alternate juror is harmless where an alternate was not needed for deliberations.").

The rare errors that have been categorized as "structural" and therefore require automatic reversal typically "'affect[ ] the framework within which the trial proceeds'" and "'infect the entire trial process,'" rendering it "'fundamentally unfair.'" *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). And the effects of such errors "are too hard to measure." *McCoy v. Louisiana*, 584 U.S. 414, 427, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018). The error at issue here does not fit within these characteristics. The facts of this case indicate no structural violation which rendered the trial unfair due to the *Batson* violation.

This case involves a prospective alternate who was stricken after the initial 12 jurors had been selected. The alternates were selected from the remaining pool of six prospective jurors. Further, the prospective alternate juror was excluded in a case where no alternate participated in the deliberations. The exclusion did not impact the jury that

issued the verdict in this case. Even if E.R. had served as an alternate, he would not have participated in deliberations. There is no conceivable way that E.R.'s exclusion could have impacted the verdict. Any allegedly discriminatory exclusion of E.R. as an alternate juror was thus harmless. Cf. *People v. Rodriguez*, 50 Cal. App. 4th 1013, 1035, 58 Cal. Rptr. 2d 108 (1996) ("With the benefit of hindsight, we can determine whether the defendant suffered any harm as a result of the [district] court's error only because no alternate juror was ever called upon to decide the defendant's guilt or innocence."). The district court did not reversibly err in overruling the *Batson* objection. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (If a district court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision.). Remand is not warranted here because the error was harmless.

III.  *Did the district court abuse its discretion in denying Camacho-Rodriguez' motion for a departure sentence and concurrent sentences?*

As his final claim, Camacho-Rodriguez challenges the district court's sentencing decision. He claims the district court abused its discretion by not granting his requests for a durational departure and concurrent sentences.

*Standard of Review*

A district court's decision to deny a departure sentence is reviewed for abuse of discretion. See *State v. Fowler*, 315 Kan. 335, Syl. ¶ 1, 508 P.3d 347 (2022) ("Appellate courts review a district court's decision to deny a departure sentence for abuse of discretion."); *State v. Goens*, 317 Kan. 616, 619, 535 P.3d 1116 (2023) ("In most cases, "'it is within the trial court's sound discretion to determine whether a sentence should run concurrent with or consecutive to another sentence."'").

A court abuses its discretion when its decision is (1) so arbitrary or fanciful that no reasonable person would agree with the decision; (2) based on an error of law; or (3) based on an error of fact such that substantial competent evidence does not support the factual findings. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). As the party asserting that the district court abused its discretion, Camacho-Rodriguez bears the burden of showing such abuse. *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021).

*Durational Departure*

A district judge must impose the presumptive sentence in the applicable sentencing guidelines grid block "unless the judge finds substantial and compelling reasons to impose a departure sentence. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 21-6815(a). In this context, the term "'substantial'" means "'real, not imagined, and of substance, not ephemeral.'" *State v. Morley*, 312 Kan. 702, 713, 479 P.3d 928 (2021). "A compelling reason is one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence." 312 Kan. at 714.

The district court sentenced Camacho-Rodriguez under a special sentencing rule, "Jessica's Law." This rule controls sentencing for defendants who are 18 years old or older and convicted of certain crimes. K.S.A. 21-6627(a)(1). Camacho-Rodriguez' crimes of conviction, aggravated criminal sodomy and aggravated indecent liberties with a child, are both included in this category of crimes. See K.S.A. 21-6627(a)(1)(C), (D).

Generally, Jessica's Law requires imposition of a sentence with a mandatory minimum 25-year term of imprisonment. K.S.A. 21-6627(a)(1). But under certain circumstances, the statute expressly allows a court to depart from the mandatory minimum sentence. K.S.A. 21-6627(d). If it is the offender's first Jessica's Law

19

conviction, the district court may depart from the 25-year mandatory minimum and impose a sentence under the Kansas Sentencing Guidelines Act grid if, "following a review of mitigating circumstances," the court finds substantial and compelling reasons to do so. *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018); K.S.A. 21-6627(d)(1).

When deciding a motion to depart in a Jessica's Law case, the district court must first review the mitigating circumstances without any attempt to weigh them against aggravating circumstances. Then the district court determines, based on all the facts of the case, whether the mitigating circumstances rise to the level of "'substantial and compelling reasons'" to depart from the mandatory minimum sentence. 308 Kan. at 913-14 (quoting *Jolly*, 301 Kan. at 324). For purposes of granting a departure, the term "'substantial'" means "'real, not imagined, and of substance, not ephemeral.'" *Morley*, 312 Kan. at 713. "A compelling reason is one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence." 312 Kan. at 714.

Mitigating circumstances under K.S.A. 21-6627(d)(2)(A)-(F) include, but are not limited to, no significant history of previous criminal activity, extreme mental or emotional disturbance of the defendant during the crime, the victim being an accomplice, the defendant having acted under significant distress or domination by another person, impaired capacity to understand the criminality of the action, and the defendant's age when the offense occurred.

Jessica's Law does not require a district court to provide reasons for denying a motion for departure. It requires only that the court articulate on the record the substantial and compelling reasons for any granted departure. See *State v. Harsh*, 293 Kan. 585, 587, 265 P.3d 1161 (2011) ("'Specificity by the district court judge when making his or her determination is not statutorily required' unless the court decides a departure is warranted.").

20

Camacho-Rodriguez notes that he meets only one of the statutorily enumerated mitigating circumstances, having no significant history of previous criminal activity. He argues that the district court abused its discretion by not finding his lack of criminal history a substantial and compelling reason to grant a departure. He also claims that the length of his sentence runs "counter to the [Kansas Sentencing Guidelines Act's] goals of saving bed space for violent offenders, reducing prison overcrowding, and rehabilitating the defendant."

These arguments do not challenge the district court's sentencing decision as being based on any legal or factual errors. Camacho-Rodriguez instead suggests only that the denial of his motion to depart to a less lengthy term was unreasonable. But his arguments fail to show that no reasonable person would agree with the district court's decision. He therefore does not show the district court abused its discretion, and we affirm the district court's decision to deny a departure sentence.

*Consecutive Sentencing*

In challenging the district court's imposition of consecutive sentencing, Camacho-Rodriguez simply notes that D.G. did not provide a victim impact statement. He also points out that he will be approximately 75 years old when he becomes eligible for parole.

Again, it is generally within the trial court's sound discretion to determine whether a sentence should run concurrent with or consecutive to another sentence. *State v. Ross*, 295 Kan. 1126, 1138, 289 P.3d 76 (2012) (quoting *State v. Jamison*, 269 Kan. 564, 576, 7 P.3d 1204 [2000]). Based on the facts cited above, a reasonable person could conclude that consecutive sentences were appropriate here. Camacho-Rodriguez thus fails to carry his burden of proving the district court's decision was unreasonable, and he does not

21

allege any errors of law or fact. Accordingly, this court affirms the district court's imposition of consecutive sentences.

Affirmed.